ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Corporation
Justin R. Shinnefield, State Bar No. 199036
Marlon C. Wadlington, State Bar No. 192138
Sundee M. Johnson, State Bar No.  226414
12800 Center Court Drive, Suite 300
Cerritos, CA 90703-9364
Telephone: (562) 653-3200 • (714) 826-5480
Facsimile: (562) 653-3333

Attorneys for POWAY UNIFIED SCHOOL
DISTRICT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWAY UNIFIED SCHOOL DISTRICT,<br><br>Plaintiff,<br><br>vs.<br><br>KATELYN CHENG, by and through her parents JERRY CHENG and ANNA CHENG<br><br>Defendant. | CASE NO.:  10 CV 0897 LAB (POR)<br><br>**PLAINTIFF POWAY UNIFIED SCHOOL DISTRICT'S OPPOSITION TO KATELYN CHENG'S MOTION FOR SUMMARY JUDGMENT**<br><br>DATE:  April 11, 2011<br>TIME:  11:15 a.m.<br>CTRM: 9 |
| KATELYN CHENG, by and through her parents JERRY CHENG and ANNA CHEN,<br><br>Counter-Claimant,<br><br>v.<br><br>POWAY UNIFIED SCHOOL DISTRICT,<br><br>Counter-Defendant. | [Filed Concurrently with Request for Judicial Notice] |

POWAY UNIFIED SCHOOL DISTRICT ("District") hereby files its Opposition to KATELYN CHENG's ("Student") Motion for Summary Judgment on the following grounds:

005463.00271/1787170v

1.   The Administrative Law Judge ("ALJ") failed to focus on the District's offer when ruling on whether the District offered a free and appropriate public education ("FAPE").

2.   The ALJ heightened the standard set by the U.S. Supreme Court when ruling on whether the District's offer constituted FAPE;

3.   There was absolutely no evidence presented that would establish that the District intentionally discriminated against the Student entitling the Student to damages pursuant to the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), or California Civil Code § 51, ("Unruh Act");

4.   The Student failed to exhaust administrative remedies as to any request for damages pursuant to the ADA, Section 504, or the Unruh Act for any time period prior to May 18, 2009.


DATED: March 28, 2011   ATKINSON, ANDELSON, LOYA, RUUD & ROMO



By:  /s/ Marlon C. Wadlington
     MARLON C. WADLINGTON, ESQ.
     Attorneys for Plaintiff, POWAY UNIFIED
     SCHOOL DISTRICT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005463.00271/1787170v

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • 1714) 826-5480
FACSIMILE: (562) 653-3333

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................... 1

II.  STATEMENT OF FACTS ........................................................ 2

    A.   Information available to the District as of the May 18, 2009 IEP team meeting. ................................................................... 2

    B.   Events occurring after the May 18, 2009 IEP team meeting. ............. 3

III. STANDARD OF REVIEW ....................................................... 5

IV.  ARGUMENT ....................................................................... 7

    A.   The ALJ's decision was fundamentally flawed because he heightened the substantive standard for determining FAPE ............. 7

        1.   Federal Courts, including this Court, the California Legislature, and OAH have established that California Education Code §§ 56345 and 56000.5 have not changed the *Rowley* standard for determining if there has been a failure to provide FAPE. ............................................. 8

    B.   The ALJ's focus was not on the adequacy of the District's offer based on the information available to the IEP team as of the May 18, 2009 IEP team meeting. ................................................. 11

        1.   There was no evidence that as of May 18, 2009, the District's offer was not designed to provide the Student with educational benefit. ........................................... 13

    C.   The information available after May 18, 2009 did not establish that the District's offer was not designed to provide the Student with educational benefit. ........................................................ 13

        1.   The Student's expert was not qualified to render an opinion regarding whether TypeWell would provide the Student with educational benefit. ........................................ 16

        2.   The District's expert was intimately familiar with all forms of transcription services available to Student. ..................... 17

        3.   The District's non-expert witnesses' testimony was more persuasive than the Student's witnesses' as it pertained to the determination of whether the District's offer provided Student with educational benefit. ................................ 17

    D.   There was absolutely no evidence presented that the District made any discriminatory decisions based on the Student's disability. ........ 18

        1.   Student's claims under the ADA and Section 504. ................ 18

        2.   The Student's claim under the Unruh Act. ....................... 22

005463.00271/1787170v

**Table of Contents**
**(Continued)**

Page

E.    To the extent the Student is requesting that this Court award her
      damages for the time period preceding the May 18, 2009 IEP
      team offer, she has failed to exhaust her administrative remedies.... 23

V.    CONCLUSION............................................................................... 23

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005463.00271/1787170v

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

Adams v. State of Oregon (9th Cir. 1999) ................................................................. 19

Adams v. State of Oregon (9th Cir. 1999)
    195 F.3d 1141.........................................................................................13, 14

Alex G. ex rel. Dr. Steven G. v. Board of Trustees of Davis Joint
    387 F.Supp.2d 1119................................................................................ 21

Board of Education of Hendrick Hudson Central District, et al. v. Rowley (1982)
    458 U.S. 176...................................................................................passim

Duvall v. County of Kitsap (9th Cir. 2001)
    260 F.3d 1124.........................................................................................19, 20

Glendale Unified Rh. Dist. v. Almasi
    122 F. Supp. 2d 1093 (C.D. Cal. 2000) ................................................. 6

Gregory K. v. Longview School District (9th Cir. 1987)
    811 F.2d 1307.........................................................................................11, 12

Huezo v. Los Angeles Community College Dist. (C.D.Cal., 2008)
    672 F.Supp.2d 1045................................................................................ 22

J.L. v. Mercer Island School District (9th Cir. 2009)
    575 F.3d 1025......................................................................................... 8

J.W. ex rel. J.E.W. v. Fresno Unified School Dist. (2009)
    611 F.Supp.2d 1097................................................................................ 10

Lovell v. Chandler
    303 F.3d 1039 (C.A.9 Hawaii, 2002) ...................................................20, 21, 22

Lunceford v. District of Columbia Board of Education
    745 F.2d 1577 (D.C. Cir. 1984) ............................................................ 6

Matthews v. Davis
    742 F.2d 825 (4th Cir. 1984).................................................................. 6

Ojai Unified Sch. Dist. v. Jackson
    4 F.3d 1467 (9th Cir. 1993).................................................................... 5, 6

Robb v. Bethel School Dist. No. 403 (C.A.9 , 2002)
    308 F.3d 1047......................................................................................... 24

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

**Table of Authorities**
**(Continued)**

**Page**

San Diego v. Cal. Special Educ. Hearing Office
    93 F.3d 1458 (9th Cir. 1996)................................................................................... 6

Schaffer v. Weast (2005)
    546 U.S. 49, 126 S. Ct. 528, 163 L.ED.2d 387 ...................................... 7, 12

Sellers by Sellers v. School Bd. of City of Mannassas, Va. (C.A.4 Va., 1998) ........................... 22

Union School District v. Smith (9th Cir. 1994)
    15 F.3rd 1519 ......................................................................................................... 7

Walczak v. Florida Union School District (2nd Cir. 1998)
    142 F.3rd 119 ......................................................................................................... 6

**STATE CASES**

Harris v. Capital Growth Investors (1991)
    52 Cal.3d 1142......................................................................................................... 23

**FEDERAL CODES/STATUES**

20 U.S.C. § 1415(i)(2)(C)(iii) ..................................................................................... 6

**STATE CODES/STATUTES**

California Education Code §§ 56000.5 and 56345, subdivision (d) ...................................9, 10, 11

California Education Code § 56341.1(b)(4)............................................................................... 9

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-8597
TELEPHONE: (562) 653-3200 • 714) 826-5480
FACSIMILE: (562) 653-3333

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This appeal arises out of a due process hearing decision rendered by ALJ Robert Helfand of the Office of Administrative Hearings ("OAH") that found the District denied the Student a FAPE.  The ALJ stated that the issue to be determined was:

> Did the District deny Student a free and appropriate public education (FAPE) by failing to provide for computer assisted real-time captioning (CART) services for Student in the May 18, 2009 individualized education program (IEP)?

As of May 18, 2009, the District offered the Student an Individualized Education Program ("IEP") which included transcription services and that it believed to constitute a FAPE for her transition from middle school to high school.  The Student's parents did not consent to the IEP.

The ALJ's decision should be overturned because he applied the incorrect standard for determining whether a district has offered a FAPE.  The standard for determining if a Student has been offered a FAPE, as set by the Supreme Court of the United States, and followed by the Ninth Circuit and this circuit's courts, is whether the District's offer is designed to provide educational benefit.  The ALJ never even considered whether the District's offer as a whole was designed to provide the Student with educational benefit.  Further, the ALJ never discussed the fact that the District listened to and considered the Student's and the parents' demands.  Instead, the ALJ held the District to a higher standard then that which was set by the U.S. Supreme Court by stating in his Decision that the District was required to provide a service that would "greatly benefit" the Student's unique needs.  The ALJ then concluded that the only service that would greatly benefit the Student was CART.

By focusing on the Student's demand as opposed to the District's offer, the ALJ shifted what should have been the Student's burden to prove that the District's

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

offer would not provide educational benefit onto the District, requiring that the District prove that its offer of TypeWell was more beneficial then CART.

The ALJ's decision should also be overturned because an IEP team offer should be judged from the standpoint of what information was available to the team as of the time the offer was made.   Courts and ALJs are required to look at a snapshot of the information available to the IEP team at the time the offer is made. Courts and ALJs are not allowed to "Monday Morning Quarterback", and base their decisions on events that occurred after the offer was made. The ALJ never discussed what information was available to the IEP team as of May 18, 2009.

Further, even assuming that the ALJ could have relied on events that occurred after the IEP team made its offer on May 18, 2009, the Student still did not sustain her burden of proof to establish that the District's offer was not designed to provide educational benefit.

To the extent that the Student is making a demand that this Court award damages pursuant to the ADA, Section 504, or the Unruh Act, the Student has not shown that the District intentionally discriminated against her based on her disability; nor that there was anything further than a reasonable disagreement between the parties as to what constituted a FAPE.  Further, as for the Student's contention that she is entitled to damages for the 2007-2008 school year, the Student failed to exhaust her administrative remedies as to any alleged violations for that school year.

## II.

## STATEMENT OF FACTS

### A.   Information available to the District as of the May 18, 2009 IEP team meeting.

The IEP in question was prepared at the end of the Student's eighth grade school year.  Prior to her eighth grade year, Student utilized a cochlear implant in one ear, and a hearing aide in the other. During the eighth grade, Student received a second cochlear implant and had the technology in her previous implant upgraded.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005463.00271/1787170v

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1   The additional implant and improved technology has measurably improved Student's
2   ability to hear in both quiet and noisy environments.  (See AR, pg. 196, and see
3   Administrative Transcript ("AT"), December 9, 2009, pg. 88).

4        The IEP at issue in this matter was convened on May 18, 2009.  The purpose
5   of the meeting was to discuss Student's transition to high school.  At the IEP team
6   meeting, Students' grades and progress on goals and objectives were reported.  She
7   was performing at an "A" or "B" level in all of her classes and progressing well
8   toward her IEP goals.  Extensive discussion regarding Parents' request for
9   transcription services in the classroom were conducted.  Parent expressed a strong
10  desire to have CART services provided to Student, and presented a document written
11  by Student's mother indicating the reasoning behind the request.  (See AR, pgs. 187-
12  200).

13       The District was presented with no other information indicating a need for
14  CART, other than the anecdotal opinions of Student and her Parents.  Plaintiff
15  presented no medical reports, nor had she consulted with the expert she retained for
16  the due process hearings as of May 18, 2009.  After assessing Student's deficits and
17  needs based on all input from the team members, the team offered Student
18  preferential seating; a second set of text books at home; copies of teachers' notes
19  when necessary; closed captioning; peer note-taker for health class; and transcription
20  services for Biology, English, and Geometry.  Further, Plaintiff was to be given a
21  personal auditory FM system to be used in class; directed lessons in small group
22  discussions; a laptop to be used for United Streaming Videos using closed captioning;
23  and a closed-captioning decoder.  (See AR, pg. 190).  The Student's Parents would
24  not consent to the IEP unless the transcription service offered was CART.

25       **B.   <u>Events occurring after the May 18, 2009 IEP team meeting.</u>**

26       Shortly after the May IEP team meeting, Student's mother sent emails to two
27  teachers at the District requesting their input regarding the Parent's request that the
28  District provide CART.  The teachers responded to the Parent on May 22, 2009 via

005463.00271/1787170v1

email, and as will be shown below, wanted to advocate for the Student to receive some form of transcription service. However, neither of the teachers possessed enough information regarding either of the available transcription services to advocate on behalf of the Student for a particular service. (See AR, pgs. 204-206 and see AT, December 15, 2009, pg. 77 re Lage's testimony, and AT, December 8, 2009, pg. 141 re Ulgade testimony).

Following the May IEP team meeting, Parents sent an email to the District again requesting CART services and requesting that the District specify the form of transcription services it was offering to Student. Theresa Kurtz, Special Education Director at the District, responded by letter on June 25, 2009, indicating that the District was offering real time meaning for meaning transcription services, such as Typewell or C-Print. (See AR, pg. 302). The Parents did not consent to this offer and filed for a due process hearing on July 29, 2009.

The Student entered high school in the fall of 2009 in accordance with the IEP, and declined to accept the transcription services offered by the District. Student performed at a high level during the first trimester, earning no grade lower than an A- without any transcription services. (See AR, pg. 342). A triennial IEP for Student was convened on October 23, 2009. At the meeting the team shared that Student had met all of her annual IEP goals and was excelling at the high school level, earning straight "A"s at the time of the meeting. (See AR, pg. 342).

The due process hearing before the ALJ occurred on December 8, 9, 15, and 16, of 2009. Katelyn's high school teachers testified regarding the extent of Student's success at the high school level, despite the fact that she has not accessed any transcription services while there. Each of the teachers who testified also indicated that Student did not require any additional accommodations or modifications in addition to those currently listed in her IEP.

The District's expert, Sheila Doctors, has extensive experience in educating students with hearing loss and with the provision of real time captioning services to

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1   those students.  She is intimately familiar with both "word for word" methodology

2   and the "meaning for meaning" methodology employed by the District.  She deftly

3   described the differences between the two methods and indicated that the term

4   "meaning for meaning" has led to some misunderstanding about the information that

5   is actually captured by the transcriptionist.  (See AT, December 16, 2009, pgs. 119-

6   120).

7         Doctors indicated that the transcription is supposed to capture information as it

8   happens, and is not a summarization.  Rather, the only information that is eliminated

9   is extraneous false starts and repetition that naturally occurs in speech.  Doctors

10   observed the District's transcriptionist and reported that the captioning provided was

11   very accurate and would meet Student's needs for transcription in the classroom.

12   (See AT, December 16, 2009, pgs. 119-120)

13         By contrast, Student's expert had not conducted any assessments of the

14   Student until December of 2009.  (See AT, December 9, 2009, pg. 17, lines 11-17).

15   She was not familiar with the "meaning for meaning" transcription services offered

16   by the District, and admitted that she was not retained to discuss those services.

17   Instead, she was retained to discuss why the Student solely needed CART.  She

18   offered no opinion whatsoever as to whether a meaning-for-meaning transcription

19   service would provide Student with educational benefit.  (See AT, December 9, 2009,

20   pgs. 44-50).

21                      **III.**

22              **<u>STANDARD OF REVIEW</u>**

23         A district court reviews the decision of the hearing officer under a modified de

24   novo standard.  (<u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1471-73 (9th Cir.

25   1993); <u>Glendale Unified Rh. Dist. v. Almasi</u>, 122 F. Supp. 2d 1093, 1100 (C.D. Cal.

26   2000).)    The Court's decision must be supported by the preponderance of the

27   evidence. (20 U.S.C. § 1415(i)(2)(C)(iii).)    The preponderance of the evidence

28   standard "is by no means an invitation to the courts to substitute their own notions of

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1    sound educational policy for those of the school authorities which they review."

2    Rowley, 458 U.S. at 206.

3         The Court is free to accept or reject the findings of the hearing officer as a

4    whole once such consideration is granted.  (San Diego v. Cal. Special Educ. Hearing

5    Office, 93 F.3d 1458, 1466 (9th Cir. 1996).  Ninth Circuit authority clearly states that

6    the proper standard of review is essentially a de novo review of a stipulated record.

7    (Ojai, 4 F.3d at 1472.)  The district court's independent judgment is not controlled by

8    the hearing officer's recommendations, but neither may it be made without due

9    deference. (Capistrano, 59 F.3d at 892).

10        In Lunceford v. District of Columbia Board of Education, 745 F.2d 1577 (D.C.

11   Cir. 1984) the D.C. circuit court noted that, ("The EAHCA does not secure the best

12   education money can buy; it calls upon government, more modestly, to provide an

13   appropriate education for each child"); Matthews v. Davis, 742 F.2d 825 (4th Cir.

14   1984)(if a school system can provide an appropriate education in a day only program,

15   further enhancement not required).  The District's program need not be the best

16   program and the District's program need not guarantee success (i.e., educational

17   benefit.  Walczak v. Florida Union School District (2nd Cir. 1998) 142 F.3rd 119).

18   Rather, the placement and services must be reasonably calculated to provide the

19   student with educational benefit at the time the program is created.

20        To determine whether the local educational agency or district has complied

21   with the IDEA, a two-part analysis is involved.  The first issue is to determine

22   whether the district has complied with the procedures set forth in the IDEA.  The

23   second issue is whether the district met the substantive component of the IDEA by

24   providing the child with a FAPE (e.g., whether the IEP is designed to meet the unique

25   needs of the child and is reasonably calculated to provide the child with educational

26   benefit).  (Board of Education of Hendrick Hudson Central District, et al. v. Rowley

27   (1982) 458 U.S. 176; Union School District v. Smith (9th Cir. 1994) 15 F.3rd 1519,

28   1524.).

Finally, the United States Supreme Court has ruled that the petitioner in a special education administrative hearing has the burden to prove his or her contentions at the hearing.  (Schaffer v. Weast (2005) 546 U.S. 49, 126 S. Ct. 528, 163 L.ED.2d 387.)  Accordingly, at the due process hearing Plaintiffs had the burden of proof as to all issues.

## IV.

## ARGUMENT

**A.**   **The ALJ's decision was fundamentally flawed because he heightened the substantive standard for determining FAPE**

Board of Education of the Hendrick Hudson Central School District v. Rowley (*Rowley*) (1982) 458 U.S. 176 [102 S.Ct. 3034] is the key United States Supreme Court case establishing the standards a school district must meet in order to provide a child with a FAPE.  In Rowley, a deaf student with minimal residual hearing and excellent lip reading skills was placed in a general education kindergarten classroom.  She was provided with an FM hearing aid to amplify the sounds spoken into a wireless receiver by the teacher or fellow students during class activities.  She successfully completed her kindergarten year.  Her IEP for her first grade year also called for placement in a general education classroom, with the FM system, instruction from a tutor of the deaf for one hour a day and a speech therapist for three hours each week.

The parents in Rowley agreed to parts of the first grade IEP, but wanted a sign language interpreter to be provided to the child in all her academic classes.  The school district employees did not believe that the child needed a sign-language interpreter and denied the request.  (Rowley at p. 185.)

The Supreme Court held that the law did not require a school district to maximize the potential of a special education child "commensurate with the opportunity provided other children."  (Rowley at p. 198.)  Instead, school districts are required to provide a basic floor of educational opportunity consisting of "access

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005463.00271/1787170v

to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." (<u>Rowley</u> at pp. 200 – 201.)

The <u>Rowley</u> Court concluded:

> When the language of the Act and its legislative history are considered together, the requirements imposed by Congress become tolerably clear. Insofar as a State is required to provide a handicapped child with a "free appropriate public education," we hold that it satisfies this requirement by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. Such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade levels used in the State's regular education, and must comport with the child's IEP. In addition, the IEP, and therefore the personalized instruction, should be formulated in accordance with the requirements of the Act and, if the child is being educated in the regular classrooms of the public education system, should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade. (<u>Rowley</u>, at pp. 203 – 204.)

The <u>Rowley</u> case was decided under the Education of the Handicapped Act, a predecessor to IDEA, but the general principles established in that case have governed special education proceedings since that time.  The Ninth Circuit recently affirmed the continuing applicability of the <u>Rowley</u> standard for determining what constitutes a FAPE in <u>J.L. v. Mercer Island School District</u> (9th Cir. 2009) 575 F.3d 1025.

> **1.** **Federal Courts, including this Court, the California Legislature, and OAH have established that California Education Code §§ 56345 and 56000.5 have not changed the *Rowley* standard for determining if there has been a failure to provide FAPE.**

It is the District's contention that the California <u>Education Code</u> does not heighten the <u>Rowley</u> standard when considering whether FAPE is offered to deaf and hard of hearing ("DHH") students.  The ALJ incorrectly interpreted California <u>Education Code</u> § 56345(d) as a "mandate for California public schools to provide

005463.00271/1787170v1

deaf students with an equal opportunity for communication access." The actual language of the statutes requires IEP teams to <u>consider and discuss</u> the related services and program options to provide the student with an equal opportunity as follows:

> "Consistent with Section 56000.5 and Section 1414(d)(3)(B)(iv) of Title 20 of the United States Code, it is the intent of the Legislature that, in making a determination of the services that constitute an appropriate education to meet the unique needs of a deaf or hard-of-hearing pupil in the least restrictive environment, the individualized education program team shall <u>consider</u> the related services and program options that provide the pupil with an equal opportunity for communication access. The individualized education program team shall specifically <u>discuss</u> the communication needs of the pupil, consistent with "Deaf Students Education Services Policy Guidance" (57 Fed. Reg. 49274 (October 1992)). . . .  (See District's Motion for Summary Judgment, pgs. 11-12).

California <u>Education Code</u> § 56341.1(b)(4) reads as follows:

(b) The individualized education program team shall do the following:

(4) <u>Consider</u> the communication needs of the pupil, and in the case of a pupil who is deaf or hard of hearing, <u>consider</u> the pupil's language and communication needs, opportunities for direct communications with peers and professional personnel in the pupil's language and communication mode, academic level, and full range of needs, including opportunities for direct instruction in the pupil's language and communication mode. *California Education Code § 56341.1(b)(4)(emphasis added)*

Student's communication needs were considered when the IEP team made its offer.  (See A.R. pg. 187-200).  Student has not challenged that contention.  More importantly, a review of the other statements of legislative intent indicates that the California Legislature did not intend to alter the federal standards. In Education Code section 56000, which sets forth the legislative intent in enacting California's special education provisions, the Legislature states, in part: "It is also the intent of the Legislature that this part does not set a higher standard of educating individuals with exceptional needs than established by Congress under the Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et seq.)"

Most recently, **this Court,** on facts virtually identical to the instant facts, agreed with OAH on the proposition that California <u>Education Code</u> § 56000.5 does

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

not heighten the <u>Rowley</u> standard, and clearly concluded that the <u>Rowley</u> case sets the substantive standard for determining whether or not a District's offer provides FAPE.    (See Request for Judicial Notice ("RJN"), Exhibit 1, Order denying Plaintiff's Motion for Summary Judgment in United States District Court Southern District of California Civil No. 09cv2621-L(NLS)).  This Court approved the ALJ's decision which stated:

> Nothing in those two subsections of <u>Education Code</u> § 56000.5 or any of the other subsections of that provision indicate a legislative intent to alter the Rowley standard or require a school district to maximize the educational potential of a deaf pupil.

> In fact, a review of the other statements of legislative intent indicates that the California Legislature did not intend to alter the federal standards.

> OAH has also recognized that there was no intent to change the <u>Rowley</u> standard in <u>Education Code</u> § 56000.5. (See RJN, Exhibit 2, OAH Decision in OAH Case No. 2009051033).

The ALJ's findings in the instant litigation are not supported by Ninth Circuit case law.   In <u>J.W. ex rel. J.E.W. v. Fresno Unified School Dist.</u> (2009) 611 F.Supp.2d 1097, the Eastern District court of the Ninth Circuit was called on to comment on the substantive standard to be utilized as it pertains to determining whether a DHH student has been denied a FAPE.  The <u>J.W.</u> court noted that,

> While a student's IEP must be reasonably calculated to provide him or her with educational benefit, school districts are required to provide only a "basic floor of opportunity." <u>Rowley</u>, 458 U.S. at 200-01, 102 S.Ct. 3034. <u>Thus, an "'appropriate' public education does not mean the absolutely best or 'potential-maximizing' education for the individual child."</u> Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1314 (1987) <u>Id.</u> At 1107.

In ruling on an issue very similar to the one in the instant litigation, an ALJ in OAH Case No. 2009080029 confirmed that the California <u>Education Code</u> Sections do not alter the <u>Rowley</u> standard as it pertains to DHH students.  (See RJN, Exhibit 3, OAH, Case No. 2009080029).  On facts very similar to the instant litigation, OAH was called upon to opine regarding whether an IEP that was going to transition an 8th

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

grade DHH student to high school provided the student with educational benefit. (See RJN Exhibit 3, Pg. 12, para. 45). The ultimate offer made by the District in that action was made on June 15, 2009 and did not include transcription services. (See RJN Exhibit 3, pg. 13, para. 49).

The parents let the IEP team know of their preference for CART as opposed to any other transcription service. (See RJN Exhibit 3, pg. 14, para. 51). Ultimately the District offered TypeWell (See RJN Exhibit 3, pg. 16, para. 61). The Student's mother in that action indicated her concern that meaning-for-meaning transcription such as typewell would "dumb-down" the classroom discussions for the student. (See Exhibit 3, pg. 18, para. 67). The student in that OAH matter argued that the standards set forth in California Education Code §§ 56000.5 and 56345, subdivision (d), mandated that the District provide student with special education program that guaranteed direct and equal communication access in the classroom. (See Exhibit 3, pg. 30, para. 37).

The ALJ soundly rejected the Student's proposition and indicated that Rowley was directly applicable to that case, and is still the substantive standard to be utilized in determining whether a school district offered a student a FAPE. OAH informed the parents in that action that their request fell into the category of a "potential-maximizing education", which a school district is not required to provide for a special needs child. (See RJN Exhibit 3, pg. 32, para. 48).

## B. The ALJ's focus was not on the adequacy of the District's offer based on the information available to the IEP team as of the May 18, 2009 IEP team meeting.

The petitioning party has the burden of persuasion. (Schaffer v. Weast (2005) 546 U.S. 49, 56-62 [126 S.Ct. 528, 163 L.Ed.2d 387].) The Student was the petitioning party. Therefore, the Student had the burden of persuasion. As stated by the ALJ in his decision, the issue was:

> Did the District deny Student a free and appropriate public education (FAPE) by failing to provide for computer

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

assisted real-time captioning (CART) services for Student in the May 18, 2009 individualized education program (IEP)?

Case law stands for the proposition that in resolving the question of whether a school district has offered a FAPE, <u>the focus is on the adequacy of the school district's proposed program.</u>  <u>Gregory K. v. Longview School District</u> (9th Cir. 1987) 811 F.2d 1307, 1314.)   A school district is not required to place a student in a program preferred by a parent, even if that program will result in greater educational benefit to the child.  <u>Id</u>.   The ALJ's phrasing of the issue in this action is a clear indication of the fact that he did not focus on the program proposed by the District.  Instead, the ALJ focused his ruling on the parents' demand.

There was absolutely no evidence presented by Student as of the May 18, 2009 IEP team meeting that Student would not benefit from the District's offer.  The evidence that was available to the IEP team as of May 18, 2009 was that Student excelled in science and math, she advocated for her needs, she was not afraid to approach her teachers for clarification of information, and she was very social.  Her current grades were at a B average and her work habits were outstanding.  (See AR, pgs. 187-200).

Her 8th grade Social Studies Teacher, Jeanine Ulgade notified the IEP team that Student's grades had decreased and that she attributed that to a lack of access to vocabulary.  Ulgade also notified the IEP team that she had cut the Student some slack in grading.  Despite the fact that Ms. Ulgade explained that she was by no means advocating for a particular transcription service, her input was taken into consideration by the IEP team.  The IEP team was also aware that Student had just received her second cochlear implant approximately two weeks prior to the IEP team meeting, and that the implant was expected to improve Student's hearing over the course of the following year.  (See AR, pg. 196).

Taking all this into consideration, the District changed Student's IEP to add language and speech; DHH services; RSP consultation services; and learning

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005463.00271/1787170v1

strategies beginning her 9th grade year.  The District also informed Student that her teachers would be given packets regarding her hearing loss.  It was noted that she would be given preferential seating; a second set of text books at home; copies of teachers' notes when necessary; closed captioning; peer note-taker for health class; and transcription services for Biology, English, and Geometry.  Student was also to be given a personal auditory FM system to be used in class; directed lessons in small group discussions; a laptop to be used for United Streaming Videos using closed captioning; and a closed-captioning decoder.  (See AR, pg. 190).

Not once does the ALJ's decision discuss why these services were not designed to provide Student with educational benefit.  The ALJ's decision should be overturned on those grounds alone.

**1.**    **There was no evidence that as of May 18, 2009, the District's offer was not designed to provide the Student with educational benefit.**

It is hornbook case law that an IEP is evaluated in light of information available at the time it was developed, and is not to be evaluated in hindsight.  Adams v. State of Oregon (9th Cir. 1999) 195 F.3d 1141, 1149.  The Ninth Circuit has endorsed the "snapshot rule," explaining that an IEP "is a snapshot, not a retrospective."   The IEP must be evaluated in terms of what was objectively reasonable when it was developed. Id.  The only information presented to the IEP team regarding Student's need for CART services was the Parents' opinion.  As of May 18, 2009, Student presented no expert opinions, there had been no observations of Student by her experts, and she had not tried TypeWell, the transcription service offered by the District.

**C.**    **The information available after May 18, 2009 did not establish that the District's offer was not designed to provide the Student with educational benefit.**

Following the May IEP team meeting, Parents sent an email to the District

005463.00271/1787170v

again requesting CART services and requesting that the District specify the form of transcription services it was offering to Student. The District's Special Education Director, Theresa Kurtz, responded by letter indicating that it was offering real time meaning for meaning transcription services, such as Typewell or C-Print. (See AR, pg. 302).

At the due process hearing, Ms. Kurtz testified that word-for-word is verbatim transcription of every spoken word, including "um" & "uh", while meaning for meaning is a transcription of <u>almost</u> every spoken word. In meaning for meaning, words that are spoken with emphasis can be noted in italics. Kurtz testified that meaning for meaning provides a more complete picture of what occurs in the classroom. (See AT, December 8, 2009, pg. 61 - lines 14-25).

Kurtz further testified that during a meaning for meaning demonstration she attended, she found that the transcriptionist captured 95% of the spoken word. (See AT, December 8, 2009, pg. 62 lines 17-19). In her research, all three systems, CART, C-Print, and TypeWell were rated high. (See AT, December 8, 2009, pg 63 lines 3-8). Further, Kurtz testified that the District hired a TypeWell certified transcriptionist, and a sample of her transcription, that was over 50 pages long for an hour class on social ethics at the college level, was very complete. It included not only words spoken by the instructor but multiple comments from students. (See AT, December 8, 2009, pg. 64 lines 4-25).

Christa Lyon Moon, the District's TypeWell transcriptionist, testified that she received her TypeWell certification in spring 2005. (See AT, December 15, 2009, pg. 15 lines 21-25; pg 28 lines 6-80. She does not recall ever having trouble keeping up with what was being spoken in the classroom. She was transcribing for about 15 students in the District. (See AT, December 15, 2009, pg. 38 line 15). Ms. Moon stated that she never received complaints from students. (See AT, December 15, 2009, pg 39 line 17). Further, she transcribes specific instructions given to students and can add emphasis by using bold or italics when there is something important like

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1   homework or a test.  (See AT, December 15, 2009, pg. 39, ln. 22 - pg. 40 lns. 6-13).

2   She can also transcribe private conversations if it is what the student wants.  (See AT,

3   December 15, 2009, pg. 44 lines 15-22).

4       Student entered high school in the fall of 2009 in accordance with the IEP,

5   with the exception of the provision of the transcription services to which Student's

6   parents did not agree.  Student performed at a high level during the first trimester,

7   earning no grade lower than an A-.  (See AR, pg. 342).

8       A triennial IEP for Student was convened on October 23, 2009.  At the

9   meeting the team shared that Student had met all of her annual IEP goals and was

10   excelling at the high school level, earning straight "A"s at the time of the meeting.

11   (See AR, pg.317-341, and see AR, pg. 342).

12       Helen Williams, the Student's Program Specialist during her 9th grade year,

13   attended the October & November IEP team meetings and observed the Student in

14   the classroom at Del Norte HS, (See AT, December 8, 2009, pg 77 lines 20-22).  She

15   observed in Student's biology class at Del Norte HS with both parents to see another

16   student use TypeWell, at the parents' request.  (See AT, December 8, 2009, pg 79

17   lines 12-20).  During the observation there were two laptops and the transcriptionist

18   was transcribing during the teacher's lecture.  The teacher was using an FM system,

19   DocuCam, and Powerpoint.  Student asked clarifying questions and advocated for

20   herself, (See AT, December 8, 2009, pg 80 lines 1-18).  The transcriptionist typed

21   what she heard the teacher saying and would insert comments to assist the student.

22   There was no substantive information from the teacher that the transcription was

23   unable to get down, (See AT, December 8, 2009, pg 81, lines 1-5 and pg. 82 lines 6-

24   8).  As of the October IEP, the Student had met all of her goals and had earned all

25   A's during the first term.  (See AT, December 8, 2009, pg 85 lines 6-19).

26   / / /

27   / / /

28   / / /

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005463.00271/1787170v

1.   **The Student's expert was not qualified to render an opinion regarding whether TypeWell would provide the Student with educational benefit.**

The Student's expert was not familiar with "meaning for meaning" transcription and seemed to misunderstand the nature of the service. (See AT, December 9, 2009, pg. 53 lines 3-25).

Plaintiff's expert testified that in essence, she spent about 12 minutes observing the TypeWell transcriptionist. (See AT, December 9, 2009, pg. 41 lines 12-21). She testified that the purpose of her classroom visit was not to see if TypeWell was effective, but rather to observe Katelyn in the classroom to see how she functioned in the classroom. (See AT, December 9, 2009, pg. 44 -45 lines 25-7). Further, she testified that the purpose of her testimony was not to determine whether or not the Student needed TypeWell, but to determine the Student needed CART. (See AT, December 9, 2009, pg. 49-50 lines 19-3). Thus, in effect, there was no testimony from any expert on the Student's side contradicting the District's expert's testimony that TypeWell would provide educational benefit.

Plaintiff's expert acknowledged that it would be an important factor for her to know how Student was performing on her goals and objectives in making a recommendation for CART. However, she did not recall if Student met or did not meet her goals. (See AT, December 9, 2009, pg. 50 lines 4-16). Plaintiff's expert never reviewed Student's grades, but acknowledged that it would be important to know her grades if she was making recommendations of this sort. Further, she did not speak to Student's teachers. (See AT, December 9, 2009, pgs. 50, lines 4 - pg. 51, line 23). Finally, Plaintiff's expert testified that she had never reviewed a TypeWell transcription to see what it looks like. (See AT, December 9, 2009, pg. 53 lines 21-25). Thus, her opinion regarding whether the service would be appropriate for Student is due little weight.

/ / /

005463.00271/1787170v1

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

2.   **The District's expert was intimately familiar with all forms of transcription services available to Student.**

The District's expert, Sheila Doctors, has extensive experience in educating students with hearing loss and with the provision of real time captioning services to those students.  She is intimately familiar with both "word for word" methodology and the "meaning for meaning" methodology employed by the District.  She deftly described the differences between the two methods and indicated that the term "meaning for meaning" has led to some misunderstanding about the information that is actually captured by the transcriptionist.  (See AT, December 16, 2009, pgs. 119 and 120).  She indicated that the transcription is supposed to capture information as it happens, and is not a summarization.  Rather, the only information that is eliminated is extraneous false starts and repetition that naturally occurs in speech.  She observed the District's transcriptionist and reported that the captioning provided was very accurate and would meet Student's needs for transcription in the classroom.  (See AT, December 16, 2009, pgs. 119 and 120).

The District's expert ultimately opined that the District's offer of TypeWell was designed to provide the Student with educational benefit.  (See AT, December 16, 2009, pg. 148-149).

3.   **The District's non-expert witnesses' testimony was more persuasive than the Student's witnesses' as it pertained to the determination of whether the District's offer provided Student with educational benefit.**

At the due process hearing, Student's high school teachers testified as to the extent of her success at the high school level, despite the fact that she had not accessed any transcription services while there.

Ryan Tu testified that Student was in his Mandarin I and now Mandarin II class.  He testified that Student's quality of work was superb and that she was obtaining an A in his class without any transcription service.  (See AT, December 16,

2009, pgs. 11-15).

Jennifer Philyaw testified that Student was in her Geometry I class last trimester and is now in Geometry II. Ms. Philyaw testified that Student was receiving an A in her class and the grade had not been altered or modified.  Student was in the top 5% of all of her students.  (See AT, December 16, 2009, pgs. 31-32 and pgs. 58-61).

Reilly Embrey testified that Student is in her ENS II class.  Her sentiments echoed that of all of Student's 9th grade teachers.  (See AT, December 16, 2009, pgs. 75-78).

Juli Cheskaty testified that Student is in her biology class.  She believed Student was receiving a B in her class.  Ms. Cheskaty noted that she has a TypeWell transcriptionist for another student in her class and has reviewed transcripts and found them to be 95-100% accurate.  (See AT, December 16, 2009, pgs. 85-88).

Each of the teachers who testified also indicated that Student does not require any additional accommodations or modifications in addition to those currently listed in her IEP.

**D.** **There was absolutely no evidence presented that the District made any discriminatory decisions based on the Student's disability.**

First, and as stated above, the actions taken by the District must be judged based on the information available to the IEP team at the time of the offer.  Adams v. State of Oregon (9th Cir. 1999) 195, F.3d 1141, 1149.  Also as stated above, the only information the District had at the time of the IEP offer was that the Parent's and Student preferred CART and that this was the only technology they were familiar with at that time.  Student had not tried any other transcription service as of that time.

**1.** **Student's claims under the ADA and Section 504.**

Case law in this Circuit pertaining to alleged violations of the ADA and Section 504 in the educational setting is very clear.  In order to establish a violation of either of these sections, more than just a disagreement as to which transcription

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

service is appropriate must be shown.

> To recover monetary damages under Title II of the ADA or the Rehabilitation Act,FN11 a plaintiff must prove intentional discrimination on the part of the defendant. Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir.1998).FN12 This Circuit has, on three occasions, refused the opportunity to determine the appropriate test for intentional discrimination under the ADA. See id. at 675; Memmer, 169 F.3d at 633; Midgett v. Tri-County Metro. Transp. Dist. of Oregon, 254 F.3d 846 (9th Cir.2001). Instead, we decided each time to set forth the options, rather than to resolve the issue, leaving subsequent courts to choose between a "deliberate indifference" or "discriminatory animus" standard. See Ferguson, 157 F.3d at 675 (setting forth, without deciding, the available options); Memmer, 169 F.3d at 633 (noting that Ferguson had delimited the range of permissible options). We now determine that the deliberate indifference standard applies. Duvall v. County of Kitsap (9th Cir. 2001) 260 F.3d 1124, 1138.

This principal was reiterated by the Ninth Circuit Court of Appeals when it stated:

> Our cases on the appropriate mens rea standard for a § 504 damages remedy recognize-as they must after Crowder-that § 504 itself prohibits actions that deny disabled individuals "meaningful access" or "reasonable accommodation" for their disabilities. See Duvall v. County of Kitsap, 260 F.3d 1124, 1135-36 (9th Cir.2001); Ferguson, 157 F.3d at 679. Cf. Lovell, 303 F.3d at 1054 (assuming that "meaningful access" is the appropriate standard). Those cases then go on to analyze the state of mind with regard to a denial of "meaningful access" or "reasonable accommodation" necessary to justify monetary damages. As to this latter question, we have held that plaintiffs must prove a mens rea of "intentional discrimination," to prevail on a § 504 claim, but that that standard may be met by showing "deliberate indifference," and not only by showing "discriminatory animus." See Duvall, 260 F.3d at 1138; id. at 1139 (deliberate indifference is "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood"); Lovell, 303 F.3d at 1056. Thus, a public entity can be liable for damages under § 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons. Mark H. v. Lemahieu (9th Cir. 2008) 513 F.3d 922, 938

This position has been taken by numerous district courts in California.  The United States District Court for the Eastern District of California stated:

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005463.00271/1787170v

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

To establish a prima facie case of discrimination under § 504, plaintiffs must show that: (1) Alex is disabled; (2) he is otherwise qualified to participate in the District's program; (3) he has been subject to discrimination by defendants solely because of his disability; and (4) defendants are recipients of federal funding. Wong v. Regents of Univ. of Cal., 192 F.3d 807, 816 (9th Cir.1999). Additionally, plaintiffs bringing § 504 claims in the special education context must show that the educational decisions relating to the student were so inappropriate as to constitute either bad faith or gross misjudgment. See, e.g., N.L. v. Knox County Schs., 315 F.3d 688, 695-96 (6th Cir.2003); Sellers v. Sch. Bd., 141 F.3d 524, 529 (4th Cir.1998); Monahan v. Nebraska, 687 F.2d 1164, 1170-71 (8th Cir.1982); Reid v. Petaluma Joint Union High Sch. Dist., 2000 WL 1229059, at *3 (N.D.Cal.2000). In support of this requirement, courts have explained that:

[t]he language of the statute is instructive. It prohibits exclusion, denial of benefits, and discrimination 'solely by reason of ... handicap.' Manifestly, in order to show a violation of the Rehabilitation Act, something more than a mere failure to provide the 'free appropriate education' ... must be shown.... We do not read § 504 as creating a general tort liability for educational malpractice, especially since the Supreme Court ... has warned against a court's substitution of its own judgment for educational decisions made by state officials. We think, rather, that either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children. Alex G. ex rel. Dr. Steven G. v. Board of Trustees of Davis Joint 387 F.Supp.2d 1119, 1124.

The United States District Court for the Northern District of California (San Jose Division) reiterated that the standard for determining that a violation for § 504 requires more than a denial of FAPE:

Lakeside also moves to dismiss Plaintiff's discrimination claims under Section 504 and the ADA. As the Court explained in its previous order, to state a prima facie case of discrimination under either Section 504 or the ADA, a plaintiff must demonstrate, among other elements, that he or she was discriminated against by reason of her disability. See, e.g., Lovell v. Chander, 303 F.3d 1039, 1052 (9th Cir.2002) (describing the prima facie elements for both statutes). Once again, neither the SAC nor Plaintiff's moving papers contain any factual allegations sufficient to support a conclusion that I.S. was discriminated against because of his disability. Because it does not appar that Plaintiff can allege additional facts tending to show actual discrimination, this claim will be dismissed without leave to amend. Stassart v. Lakeside Joint School Dist. 2009 WL 4756430.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1    Numerous other circuits have reiterated that in the educational context, more

2  than just a denial of FAPE must be shown before a denial of § 504 will be found.

3    The Eighth Circuit Court of Appeals stated:

4       The language of the statute is instructive. It prohibits exclusion, denial of benefits, and discrimination "solely by
5       reason of ... handicap." Manifestly, in order to show a violation of the Rehabilitation Act, something more than a
6       mere failure to provide the "free appropriate education" required by EAHCA must be shown. The reference in the
7       Rehabilitation Act to "discrimination" must require, we think, something more than an incorrect evaluation, or a
8       substantively faulty individualized education plan, in order for liability to exist. Experts often disagree on what the
9       special needs of a handicapped child are, and the educational placement of such children is often necessarily
10      an arguable matter. That a court may, after hearing evidence and argument, come to the conclusion that an
11      incorrect evaluation has been made, and that a different placement must be required under EAHCA, is not
12      necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his
13      or her handicap. An evaluation, in other words, is not discriminatory merely because a court would have
14      evaluated the child differently.

15      We do not read s 504 as creating general tort liability for educational malpractice, especially since the Supreme
16      Court, in interpreting the EAHCA itself, has warned against a court's substitution of its own judgment for educational
17      decisions made by state officials. We think, rather, that either bad faith or gross misjudgment should be shown
18      before a s 504 violation can be made out, at least in the context of education of handicapped children. <u>Monahan v.</u>
19      <u>State of Neb.</u> (C.A.Neb., 1982) 687 F.2d 1164, 1171.

20    The Fourth Circuit Court of Appeals stated:

21      We have held that to establish a violation of section 504, plaintiffs must prove that they have been discriminated
22      against-that they were "excluded from the employment or benefit due to discrimination solely on the basis of the
23      disability." Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir.1995) (emphasis added).  <u>Sellers</u>
24      <u>by Sellers v. School Bd. of City of Mannassas, Va.</u> (C.A.4 Va., 1998) 141 F.3d 524, 529.

25

26    The requirements for Student in the instant action to establish a violation of the

27  ADA are the same as under § 504.  <u>Lovell v. Chandler</u> 303 F.3d 1039, 1052 (C.A.9

28  Hawaii, 2002), and see <u>Huezo v. Los Angeles Community College Dist</u>. (C.D.Cal.,

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1    2008) 672 F.Supp.2d 1045, 1049.

2        In the instant action, Student states that the "refusal to provide K.C. with

3    CART under the ADA, section 504, and the Unruh act is discrimination.  (See

4    Student's Motion, pg. 18, lns. 16-18).  This statement is conclusory and ignores the

5    relevant case law that establishes that even if the District's failure to offer the exact

6    service requested by Student and her Parents violated Student's right to a FAPE,

7    more must be found before a violation of Section 504 or the ADA can be found.

8        As stated above, the District listened to Student's and Parent's concerns, and

9    being familiar with all of the available transcription services, offered a service that

10   they believed would provide Student with educational benefit.  There has been no

11   evidence presented whatsoever that the District, in making it's offer acted in *bad*

12   *faith*, with *deliberate indifference,* or with *gross misjudgment*.  See Duval, Mark H,

13   Alex G, M.J., Stassart, and the cases cited from the other circuits (Supra).

14              **2.    The Student's claim under the Unruh Act.**

15       Similar to the ADA and Section 504, in order for Student to establish a

16   violation of the Unruh Act, she must establish intentional discrimination based on her

17   disability.

18              In summary, we hold that a plaintiff seeking to establish a
             case under the Unruh Act must plead and prove intentional
19           discrimination in public accommodations in violation of the
             terms of the Act. A disparate impact analysis or test does
20           not apply to Unruh Act claims.  Harris v. Capital Growth
             Investors (1991) 52 Cal.3d 1142, 1175.
21

22       As stated above, Student has proffered no evidence, other than conclusory

23   statements, that the District's failure to agree with Student and her Parent's request

24   for a *specific* type of transcription service constituted intentional discrimination.  This

25   action does not rise to the level of an Unruh Act violation.

26   / / /

27   / / /

28   / / /

005463.00271/1787170v

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

**E.     To the extent the Student is requesting that this Court award her damages for the time period preceding the May 18, 2009 IEP team offer, she has failed to exhaust her administrative remedies.**

As stated above, the only issue addressed by the ALJ in the instant action was whether as of May 18, 2009, the District's IEP team offer constituted FAPE.  This was the offer made for the 2009-2010 school year.  No issues pertaining to any time period prior to that were addressed.  The Ninth Circuit has ruled that the failure to exhaust administrative remedies bars the Federal Courts from ruling on Student's ADA and Section 504 claims.

> With the First, Sixth, Seventh, Tenth, and Eleventh Circuits, we hold that a plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages. We understand "available" relief to mean relief suitable to remedy the wrong done the plaintiff, which may not always be relief in the precise form the plaintiff prefers.  Charlie F., 98 F.3d at 992; Padilla, 233 F.3d at 1274. Our primary concern in determining whether a plaintiff must use the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy requested. The dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. Robb v. Bethel School Dist. No. 403 (C.A.9 , 2002) 308 F.3d 1047, 1049-1050.

Student's failure to exhaust is fatal to any request that she be awarded damages for any time period prior to May of 2009.

## V.

## CONCLUSION

The ALJ's failure to focus his ruling on whether the District's offer was designed to provide Student with educational benefit was clear error.  It was also clear error to base his ruling on events and circumstances that occurred after the IEP team made its offer.  Notwithstanding the above, even if the ALJ was allowed to consider the subsequent events and occurrences in coming to his decision, there was still no evidence presented by Student that the District's offer was not designed to

provide Student with educational benefit.  That is the standard set by the United States Supreme Court.

As to Student's contentions that the District violated the ADA, Section 504, and the Unruh Act, all of these claims require that Student prove that the District acted in *bad faith*, with *deliberate indifference,* or with *gross misjudgment*.  Here, there was no evidence that this was anything other than a reasonable disagreement as to which transcription service Student should be provided.  There was certainly no discriminatory animus.

Finally, as to Student's contention that she should be awarded damages based on the District's failure to provide transcription services prior to May 18, 2009, Student failed to exhaust her required administrative remedies prior to pursuing any recovery for that earlier time period in this Court.

For the above-reasons, the District respectfully requests that this Court deny Student's motion in its entirety and grant the District's motion.

DATED: March 28, 2011          ATKINSON, ANDELSON, LOYA, RUUD & ROMO


                               By: /s/ Marlon C. Wadlington
                                   MARLON C. WADLINGTON, ESQ.
                                   Attorneys for Plaintiff, POWAY UNIFIED
                                   SCHOOL DISTRICT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005463.00271/1787170v

-24-

## CERTIFICATE OF SERVICE

Case Name:  Poway Unified School District v. Katelyn Cheng
Case No.: CV10-0897 LAB (POR)

I declare:

On March 28, 2011, I electronically filed the following document(s):

1) **PLAINTIFF POWAY UNIFIED SCHOOL DISTRICT'S OPPOSITION TO KATELYN CHENG'S MOTION FOR SUMMARY JUDGMENT**

I have caused the above-mentioned documents(s) to be electronically served using CM/ECF system which will send notification of such filing to the following email addresses:

> David M. Grey, Esq.
> GREY & GREY
> 233 Wilshire Blvd., Suite 700
> Santa Monica, CA 90401
> **FAX NO. (310)444-1970**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on March 28, 2011, at Cerritos, California.

        /s/ Melissa Martinez
        MELISSA MARTINEZ

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005463.00271/1787170v