# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWAY UNIFIED SCHOOL DISTRICT,<br><br>                          Plaintiff,<br>  vs.<br><br>KATELYN CHENG, by and through her parents JERRY CHENG and ANN CHENG,<br><br>                         Defendants. | CASE NO. 10CV0897-LAB (POR)<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT** |

Poway Unified School District challenges the decision of an Administrative Law Judge that K.C., a deaf student, is entitled to "word-for-word" transcription services under the Individuals with Disabilities Education Act. It is the District's position that "meaning-for-meaning" transcription is sufficient.[1] K.C., of course, believes that meaning-for-meaning

---

[1] "Word-for-word" transcription is similar to what a court reporter does. It creates, essentially, a running, verbatim transcript of everything that is said in the classroom. The word-for-word transcription service preferred by K.C. is CART, which stands for Communication Access Realtime Translation. "Meaning-for-meaning" transcription is not *as* exact or thorough as word-for-word transcription, but the degree of the gap between them depends on who is doing the critiquing. According to the District, meaning-for-meaning transcription captures almost all spoken words with great clarity and is the functional equivalent of CART in all critical respects. (Dkt. No. 23 at 17–19.) According to K.C., it is lumbering, unreliable, and does not capture enough of what is said in class. (Dkt. No. 22-1 at 11–13.) The meaning-for-meaning service offered by the District is called TypeWell. The ALJ addressed the relative capabilities of CART and TypeWell in his decision. (*See* AR 123–124.)

transcription is substantially inferior to word-for-word transcription, and that the Administrative Law Judge got it right.[2]

## I. Legal Background

The Individuals with Disabilities Education Act, or IDEA, requires that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The Supreme Court defined the contours of a "free appropriate public education," or FAPE, in *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 203 (1982). *Rowley* is still controlling, even though IDEA has been amended multiple times since it was decided. "The proper standard to determine whether a disabled child has received a free appropriate public education is the . . . standard set forth by the Supreme Court in *Rowley*." *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 951 (9th Cir. 2010). It is critical, then, to be clear on the Supreme Court's holding in *Rowley*.

The Court began by looking directly at the IDEA statute and finding that a FAPE "consists of educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, 458 U.S. at 188. The Court then noted that it is *access* to education, not so much the *substance* of the education received, that matters. *Id.* at 192. Indeed, "the Act imposes no clear obligation upon recipient States beyond the requirement that handicapped children receive some form of specialized education." *Id.* at 195. This "specialized education" need not provide disabled students with "every special service necessary to maximize [their] potential," but rather a "basic floor of opportunity" and

//

---

[2] The Court understands that the typical course of action in challenging the decision of an Administrative Law Judge is for the aggrieved party to initiate a new civil action challenging the decision, and then for both parties to file cross-motions for summary judgment. Here, however, K.C.'s cross-motion is rather unnecessary. K.C. does not object to any portion of the ALJ's decision, and this dispute can easily be resolved on an opening brief from the District, an opposition brief from K.C., and a reply (if necessary) from the District.

"some educational benefit." *Id.* at 199–200.  So long as a disabled student is able to benefit educationally from a school, that school has provided her with a FAPE. *Id.* at 203.

The other major piece of IDEA, in addition to the FAPE requirement, is the Individualized Education Program, or IEP.  This is a collaborative effort of the school system and the disabled student's parents, and the process by which a student's FAPE is conceived. *See Schaffer v. Weast*, 546 U.S. 49, 53 (2005).  IDEA requires that all disabled students receive an IEP, 20 U.S.C. § 1414(d)(2), and it must include, among other things, "a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child."  20 U.S.C. § 1414(d)(1)(A)(i)(IV).  The IEP must be "reasonably calculated to enable the child to receive educational benefits." *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1121 (9th Cir. 2011) (quoting *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008)).

State standards are also part of the IDEA analysis. *Rowley*, 458 U.S. at 203.[3]

---

[3] The Court hesitates to say this and no more. *Rowley* holds that a FAPE "must meet the State's educational standards," but it is not obvious that "educational standards" refers to, or incorporates, the accommodations to which disabled students are entitled under state law, as opposed to the *content* of the education received.  It seems counterintuitive that IDEA would simply federalize all of the rights disabled students have under state laws, including those that surpass the rights afforded by IDEA. *But see K.M. v. Tustin Unified Sch. Dist.*, Case No. 10-CV-1011, 2011 WL 2633673 at *6 (C.D. Cal. July 5, 2011) ("IDEA's requirement of a FAPE includes meeting the standards of California's law protecting equal communication access for students with hearing disabilities.").

The Ninth Circuit has held that "[s]tate standards that are not inconsistent with federal standards are also enforceable in federal court." *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1483 (1992); *see also Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994) ("State standards that impose a greater duty to educate handicapped children, if they are not inconsistent with federal standards, are enforceable in federal court under IDEA.").  That is also the rule in other circuits. *See, e.g.*, *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1155 (10th Cir. 2008) (holding that 20 U.S.C. § 1407 "requir[es] state regulations to conform to federal law, but allow[s] the possibility for state regulations not required by federal law"); *Stephen C. v. Radnor Tp. Sch. Dist.*, 202 F.3d 642, 647 (3d Cir. 2000) (holding that under IDEA "federal law incorporates state standards, and a school district may violate the IDEA if it fails to satisfy the more stringent state law requirements") (internal quotations omitted); *Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 658 (8th Cir. 1999) ("When a state provides for educational benefits exceeding the minimum federal standards set forth under *Rowley*, the state standards are thus enforceable through the IDEA."); *Doe By and Through Doe v. Bd. of Educ. of Tullahoma City Schools*, 9 F.3d 455, 457 (6th Cir. 1993) ("In this, and other circuits, it is settled that even if a school district complies with federal law, it may still violate

California law, however, does not require accommodations beyond those required by IDEA. Cal. Educ. Code § 56000(e).

If parents are dissatisfied with their child's IEP, they may seek an administrative hearing, referred to as an "impartial due process hearing," pursuant to 20 U.S.C. § 1415(f). And after that hearing, any aggrieved party can bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2).

## II.  Procedural History

On May 18, 2009, an IEP was convened to discuss K.C.'s transition from middle school to high school. That IEP lasted through June 9, 2009. K.C.'s IEP team agreed that she should receive transcription services, but it did not specify whether she should receive word-for-word transcription or meaning-for-meaning transcription. K.C.'s parents, who insisted on CART, did not consent to the IEP for this reason. Subsequently, on June 18, they sent an email requesting CART transcription and were informed by letter on June 25 that the District would offer only TypeWell.[4] On July 28, 2009 they requested the due

---

the [federal] Act if it fails to satisfy more extensive state protections that may also be in place.") (internal quotations omitted); *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 789 (1st Cir. 1984) (holding that IDEA "incorporates by reference state standards, be they substantive or procedural, that exceed the federal basic floor of meaningful, beneficial educational opportunity").

But there are two wrinkles. The first, which the Court has already mentioned, is that California law expressly states it does not impose duties to accommodate greater than those imposed by IDEA. The second wrinkle is that the Second Circuit has held that a district court lacks jurisdiction over an IDEA appeal that turns solely on the interpretation of state law. *See Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730 (2d Cir. 2007). The question in *Kain* was whether a second grader with Attention Deficit Hyperactivity Disorder was entitled to a teacher's aide at the private school he attended. The parties agreed that under IDEA he was not. They disagreed, however, about the school district's obligations under New York's Education Law. The Second Circuit recognized that IDEA incorporates some state standards, but held that "assuming that IDEA incorporates the relevant New York Education Law, this does not provide an independent federal question that would sustain the court's jurisdiction." *Id.* at 734. To the contrary, "[t]he determination whether New York law compels the School District to provide the one-to-one aide at a parochial school is a question best left to New York courts." *Id.* at 735.

[4] The response came from the District's Director of Special Education Theresa Kurtz. (AR 302.) It took the position that it was enough for the IEP to provide for transcription *of some kind*, and that the District "has the discretion to make decisions related to methodology." It assured K.C.'s parents that the District carefully considered their input and "discussed [K.C.'s] need for real-time, verbatim word-for-word transcription services versus real-time, meaning-for-meaning transcriptionist services," but that "[t]he ultimate offer from the District included the addition of real-time, meaning-for-meaning transcription services."

process hearing that the District now asks this Court to review. Their request alleged that the District's failure to provide K.C. with CART denied her a FAPE and violated the California Education Code.

An Administrative Law Judge with the Office of Administrative Hearings heard testimony on four days in December and found for K.C.: "[T]he District failed to provide Student a FAPE in the May 18-June 9, 2009 IEP by its failure to provide her with CART in English, Geometry, Biology, and Health classes." (AR 132.) The District was ordered to provide K.C. with CART services immediately. (AR 134.)

### III. Discussion

The ALJ summarized the law applicable to K.C.'s demand for CART and, in the Court's view, got it mostly right. He explained that "[i]n resolving the question of whether a school district has offered a FAPE, the focus is on the adequacy of the school district's proposed program." (AR 131 (citing *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987).) He further explained that "[a] school district is not required to place a student in a program preferred by a parent, even if that program will result in greater educational benefit to the child." (AR 131.) The ALJ also gave significant attention to *Rowley* and explained that "the IDEA does not require school districts to provide special education students with the best education available or to provide instruction or services that maximize a student's abilities." (AR 131.) He continued, "school districts are required to provide only a 'basic floor of opportunity' that consists of access to specialized instructional and related services which are individually designed to provide educational benefit to the student." (AR 131–132.) This is all true.

The Court is mildly troubled, however, by the attention the ALJ gave to California special education law without recognizing that it "does not set a higher standard of educating individuals with exceptional needs than that established by Congress under the Individuals with Disabilities Education Act." Cal. Educ. Code § 56000(e). The closest he came was to say "California law creates specific state standards to address the needs of deaf students, including the obligation to provide the pupil with equal opportunity for communication access that must be considered within the *Rowley* standard." (AR 132.) It is hard to know whether

the ALJ actually and improperly relied on California law in reaching his decision, however, because in the "Determination of Issue" section of his decision he doesn't refer back to the relevant law he previously summarized. (AR 132–34.)

Looking past the manner in which the ALJ relied upon California law in ordering the District to provice K.C. with CART, the Court finds that the ALJ applied a higher FAPE standard than the one he recognized was articulated in *Rowley*. Rather than focus on the adequacy of TypeWell and whether the District's offer would provide K.C. with a "basic floor of opportunity" and "some educational benefit," the ALJ appears to have considered the relative merits of TypeWell and CART and required the transcription service that would benefit her more. He cited the testimony of K.C.'s middle school science and math teacher that CART "would be most beneficial" to her, and the testimony of this teacher and another that K.C. "would benefit greatly from CART."[5] (AR 133.) Following a description of the capabilities of CART, he found that "CART is more appropriate than 'meaning-for-meaning' systems in classes which are language-dense instruction with lecture and/or class discussions as the main means of teaching." (AR 133.) *Rowley* is clear that this isn't the right analysis. K.C. is not entitled to the "most beneficial" accommodation, or the accommodation that will benefit her "greatly." *Rowley*, 458 U.S. at 199–200. Nor is the relevant question whether CART is "more appropriate" than TypeWell, but rather whether TypeWell would deprive her of the FAPE to which she is entitled under IDEA. The ALJ said "CART was the appropriate transcription service to meet Student's unique needs." (AR 133.) But again, that misstates the inquiry. CART may be appropriate to meet K.C.'s needs, but

---

[5] The District suggests that K.C.'s social studies teacher, Jeanine Ulgade, explained to the IEP team "that she was by no means advocating for a particular transcription service." (Dkt. No. 23 at 15.) The District doesn't cite to the record until the end of the paragraph containing that sentence, and the Court does not find support for the sentence on the page cited to. (*See* AR 196.) In any event, Ugalde did say that transcription would benefit K.C. without specifying CART or TypeWell (AR 125), and subsequently advocated for a transcription service that would provide K.C. "the opportunity to somehow 'get' every single word that's being said during instruction including student comments" (AR 126–127). This can reasonably interpreted as a reference to CART. Susan Lage, K.C.'s algebra and physical science teacher, said in an email that "CART would be most beneficial." (AR 126.) This dispute as to the record is largely immaterial, however, because the Court has already indicated that the proper question in assessing whether K.C. has been offered a FAPE is *not* whether she has been offered the transcription service that would prove most beneficial to her.

it does not follow from that conclusion that TypeWell is *in*appropriate, and would deny her a FAPE.[6] "Even if the services requested by parents would better serve the student's needs than the services offered in an IEP, this does not mean that the services offered are inappropriate, as long as the IEP is reasonably calculated to provide the student with educational benefits." *See D.H. v. Poway Unified Sch. Dist.*, Case No. 9-CV-2621, 2011 WL 883003 at *5 (S.D. Cal. Mar. 14, 2011) (affirming conclusion of ALJ that deaf student was not entitled to CART under IDEA).[7] So long as TypeWell confers "some educational benefit" upon K.C., it satisfies IDEA. *Mercer Island Sch. Dist.*, 592 F.3d at 947; *see also Hellgate Elementary Sch. Dist.*, 541 F.3d at 1213 n. 2; *K.S. v. Fremont Unified Sch. Dist.*, Case No. 10-15099, 2011 WL 1362467 at *1 (9th Cir. 2011) (applying "some educational benefit"

---

[6] In the "Factual Findings" section of his decision, in recounting the testimony of the District's expert, the ALJ wrote, "In order to determine which transcription service is most appropriate for a student, it is essential to look to the student's IEP goals and determine the level of support the student requires." (AR 129.) He continued, "CART is a more appropriate system for use in classes with a high density of language. CART is more appropriate than the 'meaning-to-meaning' systems in classes that are more language-dense, especially where lecturing is the main method of teaching." (AR 129–130.) It is not clear whether these were the views of the District's expert, or the ALJ's own commentary, but either way they show the ALJ to be engaged in precisely the comparative analysis that this Court believes is not contemplated by *Rowley*. *See Prescott Unified Sch. Dist.*, 631 F.3d at 1122 ("The IDEA accords educators discretion to select from various methods for meeting the individualized needs of a student, provided those practices are reasonably calculated to provide him with educational benefit.").

[7] K.C. tries to distinguish *Poway Unified Sch. Dist.* from her case on two bases. One, the plaintiff was a middle school student, not a high school student. Two, the IEP at issue did not find *any* transcription service necessary for the plaintiff to benefit from her education — although the school district did offer her meaning-for-meaning transcription service *after* she objected to the IEP and demanded CART. These are fair points; a demand for CART is certainly more plausible when transcription services are necessary than when they are not. At the same time, the plaintiff in *Poway Unified Sch. Dist.* was hearing-impaired in much the way K.C. is and received similar accommodations apart from the offer of transcription services. So, the cases may not be as factually distinguishable as K.C. argues they are. K.C. also suggests that *Poway Unified Sch. Dist.* is on appeal, but actually only a partial summary judgment was issued and cross-motions for full summary judgment are now pending before the district court. (*See* Dkt. Nos. 35–36.)
*Tustin Unified Sch. Dist.*, in which the district court affirmed an ALJ's decision that a deaf student was not entitled to CART under IDEA, is similar to *Poway Unified Sch. Dist.* It is true, as K.C. argues, that the IEP at issue in *Tustin Unified Sch. Dist.* did not recommend any kind of transcription service, although the school district "raised the possibility of TypeWell" during the IEP process. *Id.* at *4. But again, the plaintiff's impairment was similar to that of K.C.'s, and the district court's finding certainly has some persuasive value in this case. "Most critically," the district court held, "the fact that CART services would 'maximize' K.M.'s potential does not mandate the District to provide them so long as the District was providing sufficient accommodations for K.M. to offer her a reasonable educational benefit." *Id.* at *13.

standard). The ALJ, however, appears to have not asked that question.

In fairness, the ALJ does suggest at the end of his decision that there is something categorically inadequate about TypeWell, wholly apart from the relative superiority of CART. Specifically, he held that due to the density of communication in K.C.'s high school classes and the nature of those classes, TypeWell would deprive her of access to instruction. (AR 134.) This analysis is still slightly off. The "access" *Rowley* concluded a FAPE must guarantee is access to *education*, not particular levels of instruction. Indeed, "in seeking to provide such access to public education, Congress did not impose upon the States any greater substantive educational standard than would be necessary to make such access meaningful." *Rowley*, 458 U.S. at 192. "Congress expressly recognize[d] that in many instances the process of providing special education and related services to handicapped children is not guaranteed to produce any particular outcome." *Id.* (internal quotations omitted).

In addition to the above, the Court is also concerned that the ALJ failed to heed the Supreme Court's holding in *Rowley* that an IEP "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Rowley*, 458 U.S. at 204. His factual findings included "[K.C.] does well academically" and "[K.C.] continued to do well during the eighth grade and received trimester grades for social studies of B-, B, and B; language arts of B, A-, and B+; physical education of A+, A-, and A+; Physical Science of B, B, and B; and Algebra of A-, A-, and A-." (AR 123.) He cited the testimony of K.C.'s math and science teacher that, even without transcription, K.C. could earn an A or B in math and a B in science. (AR 125.) But in finding that K.C. was entitled to CART, the ALJ focused exclusively on the fact that leading up to the May 18, 2009 IEP meeting, when K.C. was receiving no transcription services at all, her grades had been declining.[8] (AR 133.)

---

[8] It is unclear from the record whether *all* of K.C.'s grades were declining or only *some* of them. Jeannine Ugalde, K.C.'s language arts and social studies teacher, testified that K.C.'s grades were decreasing as the school year progressed (AR 125), but there is no indication that this was true of K.C.'s grades across the board. (*See* AR 123 ("Student continued to do well during the eighth grade."); AR 125 ("Student was an 'A' student in Algebra, a course she was repeating; while in science, she was a 'B' student."); AR 195 ("[K.C.] continues to excel in Science and Math.").) The ALJ, however, found that "Student had not met her single goal of the IEP, *Student's grades were falling*, and both of her

The proper question under *Rowley*, however, is not that, but whether TypeWell would enable K.C. "to achieve passing marks and advance from grade to grade."[9] *Rowley*, 458 U.S. at 204.

Finally, while the ALJ referenced all of the accommodations provided to K.C., he appears to have factored only the transcription service offered into the FAPE analysis. In addition to meaning-to-meaning transcription, K.C.'s IEP called for preferential seating in her classrooms, a second set of textbooks at home, copies of teachers' notes when necessary, closed captioning, and a peer note-taker in one of her classes. K.C. was also to be provided with an auditory FM system to presumably amplify sounds, a special laptop for videos with closed captioning, and a closed-captioning decoder. (AR 190.) This must be taken into account. *See Poway Unified Sch. Dist.*, 2011 WL 883003 at *6 (factoring other accommodations provided to hearing-impaired student into the FAPE anaylsis).

---

teachers were of the opinion that she would greatly benefit from CART." (AR 133 (emphasis added).) In high school, presumably when K.C. was receiving TypeWell service, K.C. "was an 'A' student in all subjects." (AR 127.) While this certainly cuts against her claim that TypeWell denied her a FAPE, an IEP must be evaluated in light of the information *then* available. *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). The ALJ recognized this. (AR 131.)

[9] K.C. argues that "[p]assing grades alone are not FAPE and do not establish that the district has met its obligation to craft an educational program designed to meet K.C.'s unique needs." (Dkt. No. 22-1 at 17.) She cites *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307 (9th Cir. 1987) and 34 C.F.R. 300.101(c)(1). K.C. does not provide a pin cite in *Gregory K* for this point, and the Court does not find it in the decision. Section 300.101(c)(1) of the C.F.R. provides that "[e]ach State must ensure that FAPE is available to any individual child with a disability who needs special education and related services, even though the child has not failed or been retained in a course or grade, and is advancing from grade to grade." The Court reads this differently than K.C. does. Just because advancing disabled students are entitled to a FAPE does not mean that the manner in which they are advancing has no bearing on the question whether they are receiving a FAPE.

In her opposition to the District's motion for summary judgment, she argues that "changes to IDEA since *Rowley* . . . include an obligation to consider the communication needs of the student regardless of grades or other progress made at school" and she cites 20 U.S.C. § 1414(d)(3)(B)(iv) and Cal. Educ. Code § 56341.1(b)(4), which are basically identical. (Dkt. No. 24 at 10.) Section 1414(d)(3)(B)(iv) requires an IEP team to "consider the communication needs of the child, and in the case of a child who is deaf or hard of hearing, consider the child's language and communication needs, opportunities for direct communications with peers and professional personnel in the child's language and communication mode, academic level, and full range of needs, including opportunities for direct instruction in the child's language and communication mode." None of that modifies or undercuts the Supreme Court's holding in *Rowley* that an IEP and personalized instruction should enable K.C. to "achieve passing marks and advance from grade to grade." *Rowley*, 458 U.S. at 204.

## IV. Conclusion

The ALJ held a lengthy hearing in this case and worked his way through a dense factual record, and the Court respects his efforts. The Court finds, however, that he simply did not apply the "some educational benefit" standard set forth in *Rowley*. Instead, as the District suggests, he focused excessively on the relative merits of CART as compared to TypeWell and in so doing "required that the District offer a potential maximizing IEP to the Student." (Dkt. No. 23 at 21.) The ALJ's decision is therefore **VACATED**, and this matter is referred to him for further proceedings consistent with this Order.[10] The parties' cross-motions for summary judgment are **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

DATED: September 23, 2011

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[10] The ALJ needn't hold another hearing if he believes he can reach a decision consistent with this Order without one. The Court remands this matter only because the case law suggests that is the proper course. *See, e.g.*, *Mercer Island Sch. Dist.*, 592 F.3d at 946 (district court reversed ALJ's findings following a due process hearing and remanded the matter); *see also K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.*, 679 F.Supp.2d 1046, 1049 (N.D. Cal. 2009) (district court remanded to ALJ for "redetermination of whether plaintiff received a FAPE under the District's IEPs"). If the parties believe the Court should not remand this case to the ALJ and make a determination itself whether the District has complied with IDEA based on the administrative record, they may file a brief articulating that position within 7 days of the date this Order is entered.