1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWAY UNIFIED SCHOOL DISTRICT,<br><br>                              Plaintiff,<br><br>      vs.<br><br>K.C. by and through her Guardian Ad Litem, Anna Cheng,<br><br>                              Defendant<br>_____<br><br>AND RELATED COUNTERCLAIM | CASE NO. 10CV897-GPC(DHB)<br><br>**ORDER DENYING COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT AS TO IDEA CLAIM AND *SUA SPONTE* STAYS THE CASE**<br><br>[Dkt. No. 54.] |

        K.C., a high school student with profound hearing loss, filed a counterclaim against Poway

Unified School District challenging the ALJ's decision on remand concluding that the District was not

required to provide K.C. with Communication Access Real-Time Translation ("CART")[1] transcription

service under the Individuals with Disabilities Education Act ("IDEA").  On August 22, 2012, K.C.

filed a motion for summary judgment on all causes of action in the first amended counterclaim.  (Dkt.

No. 54.)  Based on the reasoning below, the Court DENIES K.C.'s motion for summary judgment on

---

        [1]CART, also known as a "word-for-word" system, "involves a stenographer who uses a stenographic (or court reporting machine) to create a verbatim transcript on a laptop viewed by the pupil.  The transcript appears almost simultaneously as the words are spoken."  (Supp. AR 567.)

the IDEA claim and *sua sponte* STAYS the remainder of the case pending resolution of the issues in K.M. v. Tustin Unified Sch. Dist., No. SACV 10-1011, 2011 WL 2633673 (C.D. Cal. July 5, 2011); and D.H. v. Poway Unified Sch. Dist., No. 09cv2621-L(NLS) (S.D. Cal. June 12, 2012) currently on appeal with the Ninth Circuit.

## Procedural Background

On April 28, 2010, Plaintiff Poway Unified School District ("District") filed a complaint for reversal of due process decision against Defendant K.C., by and through her Guardian Ad Litem, Anna Cheng pursuant to the IDEA, 20 U.S.C. § 1400 *et seq*. (Dkt. No. 1.)  District sought judicial review of Administrative Law Judge ("ALJ") Robert Helfand's decision, dated January 29, 2010, requiring District to provide K.C. with CART.  On June 25, 2010, K.C. filed a counterclaim alleging violations of Section 504 of the Rehabilitation Act of 1973; violation of the Americans with Disabilities Act ("ADA"); and violation of the Unruh Civil Rights Act. (Dkt. No. 7.)  The parties filed cross motions for summary judgment. (Dkt. Nos. 22, 23.)  On September 26, 2011, District Judge Larry A. Burns issued an order vacating the ALJ's decision and referred the matter back to the ALJ for further proceedings. (Dkt. No. 40.)  The parties' cross-motions for summary judgment were denied without prejudice. (Id.)

On May 21, 2012, on remand, ALJ Marian Tully found in favor of District and concluded that K.C. failed to show that CART was required to provide her with a free appropriate public education ("FAPE").  The parties returned to this Court.  On June 20, 2012, K.C. filed a motion to amend her counterclaim which was granted.  (Dkt. Nos. 46, 47.)  On July 13, 2012, K.C. filed an amended counterclaim alleging claims under the ADA, Unruh Civil Rights Act, Section 504 of the Rehabilitation Act of 1973, and reversal of the Office of Administrative Hearing ("OAH") decision. (Dkt. No. 50.)  On August 3, 2012, K.C. filed a motion for preliminary injunction requiring District to continue to provide her with CART while her appeal under the IDEA is pending.  (Dkt. No. 52.) On August 18, 2012, the parties filed a stipulation where District agreed to provide K.C. with CART while her IDEA claim is pending in this Court. (Dkt. No. 53.)  On August 22, 2012, K.C. filed a

[10CV897-GPC(DHB)]

motion for summary judgment on all claims in the amended counterclaim.[2]  (Dkt. No. 54.)  On October 22, 2012, the case was transferred to the undersigned judge.  (Dkt. No. 55.)  District filed an opposition on November 30, 2012.  (Dkt. No. 57.)  K.C. filed a reply on December 14, 2012.  (Dkt. No. 59.)

**Factual Background**

At the time of the due process hearing, in December 2009, K.C. was a 15 year old girl, with profound hearing loss in both ears, attending general education classes in the Poway Unified School District.  K.C.'s hearing loss occurred at the age of five months as a result of meningitis.  K.C. received a cochlear implant[3] in her right ear at 22 months.  She wore a hearing aide in the left ear until she received a cochlear implant in her left ear around the end of April 2009.  In July 2009, K.C.'s audiologist concluded that K.C. hears about 52 percent of what is said in real-life situations.

On May 18, 2009, and continuing again on June 9, 2009, an individualized education program ("IEP") meeting was convened to discuss K.C.'s transition from middle school to high school.  In attendance at the meeting were parents, program specialists Jodie Payne and Geralyn Murray; Deaf and Hard of Hearing ("DHH") itinerant teachers Carol Reeves and Ms. Simpson; Ms. Suennen; Ms. Mehaffie; Ms. Ugalde; and Kelly Burke, an assistant principal at the High School.  (Supp. AR 570; AR 187.)  At the meeting, parents requested CART transcription service.  (Supp. AR 570.)  After discussing K.C.'s performance in school, her goals, needs, services, accommodations, supplemental aids and services, assistive technological devices and services, communication strategies, teacher comments, and parent comments and requests, (AR 187-97), the May 18, 2009 IEP offered the following: DHH Language and Speech, Resource Specialist Program Learning Strategies class; preferential seating; a second set of text books for the home; copies of teacher's notes when necessary;

---

[2]In her motion for summary judgment, K.C. states she is no longer pursuing her claim under § 504 and requests that it be dismissed without prejudice.  Accordingly, the Court GRANTS K.C.'s request and DISMISSES WITHOUT PREJUDICE her § 504 claim.

[3]"A cochlear implant is an electronic device, part of which is surgically implanted in the head of the deaf individual.  Sound is picked up by an external processor, converted to energy and sent into the implanted computer chip.  Based on the energy received, the device stimulates the nerves in the inner ear, which then transmit information to the brain.  Unlike a hearing aid, the cochlear implant stimulates the ear itself; it does not merely make the sounds louder."  (Supp. AR 565.)

[10CV897-GPC(DHB)]

closed captioning for media; peer note taker in Health class; personal auditory FM system[4]; laptop for streaming closed captioned videos; closed caption decoder; visual presentation of new materials and vocabulary; and directions to teachers to face K.C. when speaking.  (Supp. AR 570.)  It also determined transcription would be provided in English, Geometry and Biology; however, it did not specify which program it would utilize. (Supp. AR 570.)  Parents refused to consent to the IEP and requested that the type of transcription service be designated in the IEP.

On June 9, 2009, the IEP meeting was reconvened to discuss which type of transcription system would be provided to K.C.  (Supp. AR 571.)  Parents sought CART for K.C.  Ms. Simpson informed parents with District had communicated with other school districts about CART and described a student from one district who switched from CART to "meaning-for-meaning" system because he was overwhelmed by the amount of information presented in the verbatim format.  (Supp. AR 571.)  Ms. Simpson concluded "meaning for meaning" system was appropriate for K.C.  (Supp. AR 571.)  District concluded that K.C. would benefit from transcription services but IEP team did not specify the modality or specific program.  (AR 198.)  Parents did not consent to the IEP.  (AR 200.)

K.C. filed a due process complaint with Office of Administrative Hearing ("OAH") against District pursuant to 20 U.S.C. § 1415 and California Education Code section 56500 *et. seq*.  An administrative hearing was held and evidence presented.  On January 29, 2010, ALJ Helfand granted the student's request and ordered that District provide the student with CART services in English, Health, Geometry and Biology classes immediately.  (AR 120-134.)  District appealed the ALJ's decision and filed a complaint in this Court on April 28, 2010.  District Judge Burns vacated the ALJ's decision and remanded the matter for further proceedings.  On remand, ALJ Tully[5] concluded that given the information the District had at the time of the offer of FAPE, District reasonably concluded

---

[4] "An FM system uses radio frequencies to transmit audio signals directly to hearing aides and cochlear implants.  It consists of a wireless microphone the speaker wears close to his mouth and the desired acoustic signal is transmitted directly into the hearing device."  (Supp. AR 565.)

[5] In her decision, she explained that normally, the remanded case would be assigned to the ALJ who presided at the hearing; however, at the time the case was remanded, ALJ Helfand was not available.  (Supp. AR 564 n.1.)  Therefore, ALJ Tully was assigned the matter.

1   that TypeWell would provide the student some educational benefit within the meaning of <u>Rowley</u>[6].

2   The student, therefore, failed to show that CART transcription was required to provide her a FAPE.

3    (Supp. AR 580.)

**Discussion**

4

5   **A.    Standard of Review**

6          Judicial review under the IDEA is less deferential than in most administrative cases.  <u>J.L. v.</u>

7   <u>Mercer Isl. Sch. Dist.</u>, 592 F.3d 938-949 (9th Cir. 2010).  The IDEA allows the reviewing court to hear

8   evidence that goes beyond the scope of the administrative record and based on a preponderance of the

9   evidence grant such relief as the court deems is appropriate.  <u>Anchorage Sch. Dist. v. M.P.</u>, 689 F.3d

10   1047, 1053 (9th Cir. 2012) (citing 20 U.S.C. § 1415(i)(2)(C))[7].  However, a complete <i>de novo</i> review

11   is inappropriate. <u>Id.</u> (citing <u>Amanda J. ex rel. Annette J. v. Clark County Sch. Dist.</u>, 267 F.3d 877, 887

12   (9th Cir 2001)).  The Court may not substitute its "own notions of sound educational policy for those

13   of the school authorities which they review."  <u>Bd. of Educ. of Hendrick Hudson Central Sch. Dist.,</u>

14   <u>Westchester County v. Rowley</u>, 458 U.S. 176, 206 (1982).   Because states have the primary

15   responsibility of formulating each child's education, the administrative proceedings are accorded "due

16   weight" and the reviewing court must consider the findings carefully.  <u>Anchorage Sch. Dist.</u>, 689 F.3d

17   at 1053.  After such consideration, the court is free to accept or reject the findings in part or in whole.

18   <u>Ash v. Lake Oswego Sch. Dist., No. 7J</u>, 980 F.2d 585, 587–88 (9th Cir. 1992) (citations omitted).

19   Ultimately, the weight accorded the administrative findings is a matter within the discretion of the

20   reviewing court. <u>Id.</u>; <u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1471 (9th Cir. 1993).  A court

21   should give deference to the administrative findings when they are thorough and careful.  <u>Id.</u>  The

22   burden is on the party challenging the hearing officer's determination to persuade the Court that the

23   hearing officer was incorrect.  <u>Seattle Sch. Dist., No. 1 v. B.S.</u>, 82 F.3d 1493, 1498 (9th Cir.1996).

24   / / / /

25   _____

26          [6]<u>Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester County v. Rowley</u>, 458 U.S.
     176, 206 (1982).

27          [7]According to IDEA, the Court "shall receive the records of the administrative proceedings;
28   (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the
     preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20
     U.S.C. § 1415(i)(2)(C).

**B.** **IDEA**

The Individuals with Disabilities Education Act ("IDEA"), enacted in 1990, originated in 1970 as part of the Education of the Handicapped Act.  Mark H. v. Lemahieu, 513 F.3d 922, 928 (9th Cir. 2008).  In enacting the IDEA, Congress sought "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).  The IDEA defines a FAPE as:

> special education and related services that-(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).

To provide a FAPE under the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an IEP, and determine an appropriate educational placement of the student.  20 U.S.C. § 1414.  An IEP is a written statement for each child with a disability that is developed, reviewed, and revised  by an IEP team consisting of the local educational agency, the student's teachers and parents.  20 U.S.C. § 1414(d)(1)(B).  An IEP is tailored to the unique needs of the handicapped child.  20 U.S.C. § 1401(29).  An IEP must include, among other things, "statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child."  20 U.S.C. § 1414(d)(1)(A)(i)(IV).  Moreover, an IEP is to be evaluated based on information available at the time it was developed.  Adams v .State of Oregon, 195 F.3d 1141, 1149 (9th Cir. 1999).  An IEP is a "snapshot, not a retrospective."  Id. at 1149.

In Rowley, the United States Supreme Court set the controlling standard for defining a FAPE

[10CV897-GPC(DHB)]

under the IDEA.  458 U.S. 176 (1982).[8]  Despite amendments to the IDEA, the standard in <u>Rowley</u> is still controlling in the Ninth Circuit.  <u>J.L. v. Mercer Island Sch. Dist.</u>, 592 F.3d 938, 951 & n.10 (9th Cir. 2010).  The United States Supreme Court concluded that the IDEA does not require school districts to provide special education students with the best education available or to provide instruction that maximizes the student's ability commensurate with the opportunities provided other children.  <u>Id.</u> at 198, 200-01.  Instead, school districts must give students with disabilities a "basic floor of opportunity" which "consists of access to specialized instruction and related services which are individually designed to provide *educational benefit* to the handicapped child."  <u>Id.</u> at 200-01 (emphasis added); <u>see also</u> <u>Mercer Island Sch. Dist.</u>, 592 F.3d 938, 951 & n.10 (9th Cir. 2010) ("educational benefit," "some educational benefit," or a "meaningful educational benefit" all refer to the same standard).  The IEP should be reasonably calculated to enable the student "to achieve passing marks and advance from grade to grade."  <u>Rowley</u>, 458 U.S. at 203-04.

The choice of methodology in providing special education services is the prerogative of the school district.  <u>Rowley</u>, 458 U.S. at 208 ("once a court determines that the requirements of the [IDEA] have been met, questions of methodology are for resolution by the States."); <u>see also</u> <u>C.P. v. Prescott Unified School District</u>, 631 F.3d 1117, 1122 (9th Cir. 2011) (holding that IDEA allows educators the discretion to select from various methods in order to meet the individualized needs of a student if those practices are reasonably calculated to provide educational benefit); <u>B.M. ex rel. R.M. v. Encinitas Union Sch. Dist.</u>, 2013 WL 593417, *4 (S.D. Cal. Feb. 14, 2013); <u>Carlson v. San Diego Unified Sch. Dist.</u>, 380 Fed. Appx. 595, 597 (9th Cir. 2010) (affirming district court's holding that school district provided student with FAPE as the case boiled down to a disagreement over the proper methodology).  Parents cannot dictate the particular methodology to be used.  <u>See Rowley</u>, 458 U.S. 207-08; <u>see also</u> <u>Gregory K. V.v Longview Sch. Dist.</u>, 811 F.2d 1307, 1314 (9th Cir. 1987) (parents believed Lois Lewis's tutoring helped student learn; however, court must focus primarily on District's proposed

---

[8]<u>Rowley</u> involved an eight-year old deaf student.  <u>Rowley</u>, 458 U.S. at 184.  Parents requested a qualified sign-language interpreter in all her academic classes for first grade.  <u>Id.</u>  The student had successfully completed her kindergarten year with the use of a FM hearing aid.  <u>Id.</u>  The Court held that the student, who was performing better than the average child in her class and was advancing easily from grade to grade, was receiving personalized services and related services to meet her educational needs.  <u>Id.</u> at 209-10.  Therefore, the school district did not violate FAPE in not providing student with sign-language interpreter.  <u>Id.</u>

[10CV897-GPC(DHB)]

1    placement, not the alternative that the family preferred).

2         Rowley requires courts to conduct a two-step inquiry as to whether a child has received a
3    FAPE.   First, the Court must determine whether the state has complied with the procedural
4    requirements of the IDEA.  Rowley, 458 U.S. at 206–07.  Second, the Court must determine whether
5    the state has met the substantive component of the IDEA, namely the requirement that the state provide
6    an "appropriate" education.  Id.  In this case, the parties dispute the substantive component of the
7    IDEA.

8         In the prior order on summary judgment in this case, Judge Burns asserted that state standards
9    are also a part of the IDEA analysis[9] and that California Education Code section 56000(e) explicitly
10   states that it "does not set a higher standard of educating individuals with exceptional needs than that
11   established by Congress under the Individuals with Disabilities Education Act (20 U.S.C. § 1400 *et*
12   *seq.*)."  (Dkt. No. 40 at 3.)

13        California Education Code section 56000.5(b)(7) provides that deaf children should have
14   "direct and appropriate access to all components of the educational process, be able to communicate
15   directly with their peers and that their unique communication mode is respected, utilized and
16   developed."  Cal. Educ. Code § 56000.5(b)(7).  Deaf children should be able to "communicate
17   directly" with their peers and that their "unique communication mode is respected, utilized, and
18   developed to an appropriate level of proficiency."  Id. § 56000.5(b)(4); (b)(2).  Moreover, the IEP team
19   "shall consider the related services and program options that provide the pupil with an equal
20   opportunity for communication access."  Id. § 56345(d).

21        California Education Code section 56341.1(b)(4) provides that an IEP shall:

22        [c]onsider the communication needs of the pupil, and in the case of a pupil who is
          deaf or hard of hearing, consider the pupil's language and communication needs,
23        opportunities for direct communications with peers and professional personnel in
          the pupil's language and communication mode, academic level, and full range of
24        needs, including opportunities for direct instruction in the pupil's language and
          communication mode.

25

26

27        [9]Judge Burns wrote that "[t]he Court hesitates to say this and no more" concerning his
     statement that "[s]tate standards are also part of the IDEA analysis." (Dkt. No. 40 at 3.)  In a footnote,
28   Judge Burns questions the application of the Court's assertion in Rowley's that FAPE "must meet the
     State's educational standards" and the interplay between state and federal standards.  (Id. at 3-4.)

1    Cal. Educ. Code § 56341.1(b)(4).

2        Similarly, the IDEA provides that the IEP Team

3        shall consider the communication needs of the child, and in the case of a child who
         is deaf or hard of hearing, consider the child's language and communication needs,
4        opportunities for direct communications with peers and professional personnel in
         the child's language and communication mode, academic level, and full range of
5        needs, including opportunities for direct instruction in the child's language and
         communication mode.
6

7    20 U.S.C. § 1414(d)(3)(B)(iv).  The parties do not dispute that the California Education Code section

8    56000 *et seq.* does not provide a heightened standard than the one expressed in Rowley.  (Dkt. No. 57-

9    1 at 17; Dkt. No. 54-1 at 24.)

10       In the prior order, Judge Burns concluded that ALJ Helfand did not apply the "some

11   educational benefit" standard under Rowley and instead compared the relative merits of CART against

12   the merits of TypeWell concluding that CART would benefit K.C. more than TypeWell.  Judge Burns

13   vacated the decision and remanded the matter back to the ALJ.  On remand, ALJ Tully concluded that

14   the District complied with FAPE when it offered TypeWell.

15       K.C. argues that at the time of the IEP, K.C.'s grades were declining[10], she could not do

16   independent work because of concerns with her reading, she had vocabulary and summarization skills

17   deficits and these problems were a result of her hearing loss.  She also alleges that the Tully decision

18   did not address K.C.'s communication needs and only focused on whether she was passing from grade

19   to grade.  She further contends that ALJ Tully deviated from Helfand's finding with no explanation

20   even though she did not observe live witness testimony.  As to this argument, K.C. does not provide

21   any legal authority to support her claim that an ALJ on remand cannot add or delete facts from a prior

22   decision. Lastly, K.C. asserts that ALJ Tully assessed the IEP on K.C.'s academic performance after

23   the IEP and not at the time the IEP plan was implemented.  As to this argument, the Court notes that

24   the ALJ addressed K.C.'s academic performance in the fall of 2009 which is after the  IEP meeting

25   date of May/June 2009.  To the extent that the ALJ relied on these facts to support her conclusion, they

26   are disapproved.

27

28       [10]Judge Burns noted that it was unclear from the record whether all of K.C.'s grades were
     declining or only some of them.  (Dkt. No. 40 at 8 n. 8.)

1    In opposition, District does not directly address K.C.'s numerous arguments but contends that

2    state standards only require District to consider and discuss the services and program options to

3    provide the student with an equal opportunity and that there was no evidence by K.C., at the time of

4    the IEP meeting, that she would not benefit from the District's offer.

5    Two district court cases, with factually similar background held that the IDEA did not require

6    the school district to provide CART as part of FAPE.  See D.H. v. Poway Unified Sch. Dist.,

7    09cv2621-L(NLS), 2011 WL 883003 (S.D. Cal. March 14, 2011); K.M. v. Tustin Unified Sch. Dist.,

8    No. SACV 10-1011 DOC(MLGx), 2011 WL 2633673 (C.D. Cal. July 5, 2011).

9    In D.H., District Judge Lorenz, upheld the ALJ's conclusion that a deaf student was provided

10   with FAPE and CART services was not required under the IDEA.[11]  D.H., 2011 WL 883003, at *7.

11   In the case, the student received

12   an FM amplification system for classroom and school assemblies, including a pass-
      around microphone to capture the input of her peers.  She also received access to
13   close captioning for video presentations at school.  With these services she earned
      excellent grades, predominantly As and some Bs.  She also received access to close
14   captioning for video presentations at school.  In addition, she was provided with
      preferential seating away from noise, access to copies of her peers' or teacher's
15   lecture notes, written directions, an extra set of textbooks as needed, access to a
      quiet work environment, and extra time for some assignments.  Finally, her teachers
16   were provided with information packets and training regarding Plaintiff's hearing
      loss and the necessary accommodations, including the need to face Plaintiff when
17   giving instruction, pass the microphone around the class during other students'
      participation, and repeating or rephrasing other students' responses.  Plaintiff was
18   also provided with specific deaf and hard of hearing services and speech and
      audiological services.

19

20   Id. at 6 (citations omitted).  Parents requested CART but the district declined.  Id.  The court concluded

21   that the district complied with California education standards for hearing-impaired students.  Id. at 5.

22   California Education Code does not require any particular service or technology be provided but that

23   the "IEP team *consider* Plaintiff's needs and assistive services and programs to provide her with an

24   equal opportunity for communication access and that they discuss her needs and necessary services

25   in their effort to comply with the requirement of a free appropriate public education."  D.H., 2011 WL

26   883003 at *4 (emphasis in original).  D.H. did not dispute that the district considered her needs and

27

28        [11]While District offered a transcription service which would summarize the words spoken in
      class as a response to the parents' request for CART, it was not a necessary service and not included
      in the student's IEP.

[10CV897-GPC(DHB)]

assistive services and programs.  Accordingly, the court held that the ALJ did not err in concluding that the IEP complied with the IDEA.

In K.M., the district court affirmed the ALJ's decision that the school district was not required to provide the student with CART services under the IDEA.  K.M., 2011 WL 2633673 at *13.  K.M. is a deaf, sixteen year old student with bilateral cochlear implants.  Id. at 1.  She relies on lip-reading and observations of social cues to communicate with others.  Id.  K.M. expressed difficulty hearing what is said in the classroom especially when other students are speaking.  She needs to concentrate and focus more intently which causes her to be mentally exhausted by the end of the day and causes her to be emotionally very tired.  Id.  Despite her difficulty, student has earned average to above-average grades.  Id. at 2.

She receives weekly auditory-visual therapy ("AVT"), preferential seating in class, has student comments repeated, is provided closed captioning at times on videos and provided copies of notes.  Id.  In middle school, she was provided with an FM system in the classroom but she did not like it as it picked up a lot of static and would distract her when hearing private conversations between the teachers and other students.  Id. at 3.  She stopped using it in eighth grade since it gave her headaches and picked up distracting background noises which impeded her ability to focus.  Id.  K.M.'s mother requested CART because of student's inability to hear class discussions but the district refused.  Id.  The district raised the possibility of Typewell but the mother opposed.  Id. at 4.  The District Judge concluded that "the fact that CART services would 'maximize' K.M.'s potential does not mandate the District to provide them so long as the District was providing sufficient accommodations for K.M. to offer her a reasonable educational benefit."  Id. at 13.

In this case, on remand, ALJ Tully provided a thorough, detailed analysis of the law and relevant factual findings.  She acknowledged the legal elements of an IEP with specific consideration for DHH students and the IDEA's provision of the IEP team to "consider the communication needs" for DDH students and to consider "opportunities of direct communication with peers and professional personnel."  In her discussion, she also noted the student's need.  She noted that K.C. is often unable to hear when her classmates participate in class discussion and misses or misunderstands instructions and assignments.  (Supp. AR 572.)  Frequently, she misses what is said in class.  (Supp. AR 572.)  She

must concentrate intensely to understand what is said in class which causes her frequent headaches. (Supp. AR 572.) Tully also noted that student's grades decreased as the school year progressed which her Language Arts and Social Studies teacher, Ms. Ugalde, attributed to the lack of specialized vocabulary which negatively impacted her learning. (Supp. AR 568-69.)  Ms. Ugalde stated that she graded K.C. differently than her other students by taking into account her hearing difficulties so she actually received higher grades than she actually earned. (Supp. AR 569.) As her eighth grade year progressed, K.C.'s writing became more organized, had better insight into literature and understood more concepts in social studies. (Supp. AR 569.)

In explaining the District's offer to provide TypeWell, rather than CART, the ALJ stated that she was a very good auditory learning and supplemented her understanding of classroom instruction with a variety of strategies and was very successful.  The IEP team was aware that K.C. had recently received her second cochlear implant and it could take up to a year for hearing to adjust.  District also listened and considered Parents' and student's preference for CART, read Parent's report, researched CART, observed meaning-for-meaning transcription services in use at another high school and communicated with other districts.  (Supp. AR 579.)  District's expert, who was familiar with both CART and Type Well, and observed K.C. in three classes, concluded that she did not need CART and that TypeWell would be "fine."  (Supp. AR 575.)  After consideration of the issues raised in the IEP, the District offered TypeWell transcription services for Biology, English and Geometry.

Moreover, besides transcription services, the IEP team came up with a comprehensive scheme to address K.C.'s needs.  These included DHH Language and Speech; Resource Specialist Program Learning Strategies class; preferential seating; a second set of text books for the home; copies of teacher's notes when necessary; closed captioning for media; peer note taker in Health class; personal auditory FM system; laptop for streaming closed captioned videos; closed caption decoder; visual presentation of new materials and vocabulary; and directions to teachers to face K.C. when speaking. (Supp. AR 570.)  At the time of the IEP, K.C. was performing at an A or B in all of her classes and progressing on her IEP goals and advancing from grade to grade.  See Rowley, 458 U.S. at 203-04.

Based on the information available to it in May 2009, the District offered K.C. an IEP which included transcription service.  District does not dispute that transcription services are needed.  K.C.

objects to the type of transcription service offered.  In essence, the  disagreement is over the proper methodology or modality.   School districts have the prerogative to determine the choice of methodology and parents are not allowed to select service providers or compel a district to provide a particular education program or methodology when the one offered constitutes FAPE.  See Rowley, 458 U.S. 207-08; see also Gregory K. V.v Longview Sch. Dist., 811 F.2d 1307, 1314 (9th Cir. 1987) (parents believed Lois Lewis's tutoring helped student learn; however, court must focus primarily on District's proposed placement, not the alternative that the family preferred).  Accordingly, the Court affirms the ALJ's decision in this matter as careful, reasoned and supported by the preponderance of the evidence.

**C.     Title II of the ADA and Unruh Civil Rights Act**

K.C. argues that District's failure to provide K.C. with CART is a violation of Title II of the ADA and its implementing regulation, 28 C.F.R. § 35.160.[12]  She contends that the standard to provide a FAPE under the IDEA is distinct from providing "effective communication" under the ADA. District contends that the ADA claim fails since the ALJ concluded there was a denial of FAPE under the IDEA.

The Tustin and D.H. cases are currently on appeal with the Ninth Circuit.  The issue in both cases is whether a school district's provision of a FAPE under the IDEA establishes full compliance with its obligation under Title II of the ADA to provide "effective communication."  The Unruh Civil Rights Act claim is also on appeal in the Tustin case.  Plaintiff's counsel in this case is also counsel in the Tustin and D.H. cases.  Defendant's counsel is also counsel in the D.H. case.  Tustin and D.H. were consolidated on appeal for purposes of oral argument and argued before the Ninth Circuit on

---

[12]The ADA prohibits discrimination against qualified individuals with disabilities.  42 U.S.C. § 12132.  The regulations implementing Title II specifically provide that:

(a) A public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as *effective as communications* with others.
(b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an *equal opportunity* to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.

28 C.F.R. § 35.160 (emphasis added).

[10CV897-GPC(DHB)]

1  December 3, 2012.

2      "The District Court has broad discretion to stay proceedings as an incident to its power to

3  control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997) (citing Landis v. N. Am. Co., 299

4  U.S. 248, 254 (1936)). In determining whether to grant a motion to stay, "the competing interests

5  which will be affected by the granting or refusal to grant a stay must be weighed." Lockyer v. Mirant

6  Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (citing CMAX Inc. v. Hall, 300 F.2d 265, 268 (9th Cir.

7  1962)). These interests include: "(1) the possible damage which may result from the granting of a stay,

8  (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the

9  orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and

10  questions of law which could be expected to result from a stay." Id.

11      In this case, there would be no damage, hardship or inequity from the granting of a stay.  A stay

12  would avoid inconsistent rulings and contribute to the interests of justice and efficiency.  The Court

13  exercises its discretion and *sua sponte* stays the proceedings pending a ruling on the Tustin and D.H.

14  cases by the Ninth Circuit.

15  **D.      Requests for Judicial Notice**

16      District filed a request for judicial notice on December 12, 2012.  (Dkt. No. 58.)  District seeks

17  the Court to take judicial notice of Gatto v. County of Sonoma, 98 Cal. App. 4th 744 (2002).  K.C. also

18  filed a request for judicial notice on March 1, 2013.  (Dkt. No. 60.)  She seeks the Court to take

19  judicial notice of Argenyi v. Creighton Univ., No. 11-3336/3461 (8th Cir. Jan. 15, 2013) concerning

20  a claim for CART by a hearing impaired medical student under Title III of the ADA.

21      The Court DENIES both parties' requests for judicial notice as they were not relied upon in

22  ruling on the instant motion for summary judgment.

23  / / / /

24  / / / /

25  / / / /

26  / / / /

27  / / / /

28  / / / /

1

**Conclusion**

2          Based on the above, the Court DENIES Defendant/Counterclaimant's motion for summary

3     judgment as to the IDEA claim and *sua sponte* STAYS the remainder of the case pending a ruling by

4     the Ninth Circuit in <u>K.M. v. Tustin Unified Sch. Dist.</u>, No. SACV 10-1011, 2011 WL 2633673 (C.D.

5     Cal. July 5, 2011); and <u>D.H. v. Poway Unified Sch. Dist.</u>, No. 09cv2621-L(NLS) (S.D. Cal. June 12,

6     2012).  The Court **VACATES** the hearing set for March 15, 2013.

7          IT IS SO ORDERED.

8

9     DATED:  March 13, 2013

10

11                                                    HON. GONZALO P. CURIEL
                                                      United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[10CV897-GPC(DHB)]