1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

POWAY UNIFIED SCHOOL
DISTRICT,

12

                              Plaintiff,

13

     vs.

14

15

K.C. by and through her Guardian Ad
Litem, Anna Cheng,

16

                            Defendant

17

18

AND RELATED COUNTERCLAIM

19

CASE NO. 10CV897-GPC(DHB)

**ORDER DENYING
COUNTERCLAIMANT'S
MOTION FOR SUMMARY
JUDGMENT**

[Dkt. Nos. 54, 64.]

20

     Before the Court is Counterclaimant K.C.'s motion for summary judgment as to

21

the remaining causes of action under Title II of the Americans with Disabilities Act

22

("ADA") and California's Unruh Civil Rights Act ("Unruh Act") as alleged in the first

23

amended counterclaim against Counterdefendant Poway Unified School District

24

("District"). On March 13, 2013, the Court denied Counterclaimant's motion for

25

summary judgment as to the Individuals with Disabilities Education Act ("IDEA")

26

claim[1] but *sua sponte* stayed the remainder of the case pending a ruling by the Ninth

27

28

     [1]In that order, the Court also granted Counterclaimant's request to dismiss her claim
under § 504 of the Rehabilitation Act of 1973. (Dkt. No. 61 at 3 n. 2.)

                         [10CV897-GPC(DHB)]

Circuit in <u>K.M. v. Tustin Unified Sch. Dist.</u>, No. SACV 10-1011, 2011 WL 2633673 (C.D. Cal. July 5, 2011); and <u>D.H. v. Poway Unified Sch. Dist.</u>, No. 09cv2621-L(NLS) (S.D. Cal. June 12, 2012).  In <u>K.M.</u> and <u>D.H.</u>, the district courts granted summary judgment for the school districts holding that the school districts had fully complied with the IDEA and that the ADA claims were foreclosed by the failure of the IDEA claims.  The plaintiffs appealed the decisions with the Ninth Circuit challenging the district courts rulings foreclosing their ADA claims arguing that Title II of the ADA is distinct from the school districts' obligation under the IDEA.

On August 6, 2013, the Ninth Circuit reversed and remanded the district court's granting of summary judgment on the ADA claim and the Unruh Act claim in <u>K.M.</u> and remanded the matter for further proceedings.  <u>K.M. v. Tustin Unified Sch. Dist.</u>, 725 F.3d 1088, 1103 (9th Cir. 2013).  The Ninth Circuit also reversed and remanded the district court's granting of summary judgment on the ADA claims in the <u>D.H.</u> case.  <u>Id.</u>

On October 30, 2013, the Court lifted the stay in this case and set a briefing schedule on the remaining issues. (Dkt. No. 63.)  On November 22, 2013, K.C. filed a brief in support of her motion for partial summary judgment.  (Dkt. No. 64.)  On December 6, 2013, District filed a response.  (Dkt. No. 65.)  Pursuant to the Court's order granting K.C. *ex parte* motion for leave to file a reply brief, K.C. filed a reply on December 11, 2013.  (Dkt. No. 68.)

On December 23, 2013, K.C. filed a request for judicial notice as to the order granting plaintiff's motion for preliminary injunction, filed on December 19, 2013, in the <u>D.H.</u> case, 09cv2621-L(NLS).  (Dkt. No. 69-1.)  No opposition having been filed and since the document is subject to judicial notice, the Court GRANTS K.C.'s request for judicial notice.

**Procedural Background**

On April 28, 2010, Plaintiff Poway Unified School District filed a complaint for reversal of due process decision against Defendant K.C., by and through her Guardian Ad Litem, Anna Cheng pursuant to the IDEA, 20 U.S.C. § 1400 *et seq*.  (Dkt. No. 1.)

[10CV897-GPC(DHB)]

District sought judicial review of Administrative Law Judge ("ALJ") Robert Helfand's decision, dated January 29, 2010, requiring District to provide K.C. with Communication Access Real-Time Translation ("CART")[2]. On June 25, 2010, K.C. filed a counterclaim alleging violations of Section 504 of the Rehabilitation Act of 1973; violation of the ADA; and violation of the Unruh Civil Rights Act. (Dkt. No. 7.) The parties filed cross motions for summary judgment. (Dkt. Nos. 22, 23.) On September 26, 2011, District Judge Larry A. Burns issued an order vacating the ALJ's decision and referred the matter back to the ALJ for further proceedings. (Dkt. No. 40.) The parties' cross-motions for summary judgment were denied without prejudice. (Id.)

On May 21, 2012, on remand, ALJ Marian Tully found in favor of District and concluded that K.C. failed to show that CART was required to provide her with a free appropriate public education ("FAPE") under the IDEA. The parties returned to this Court. On June 20, 2012, K.C. filed a motion to amend her counterclaim which was granted. (Dkt. Nos. 46, 47.) On July 13, 2012, K.C. filed an amended counterclaim alleging claims under the ADA, the Unruh Civil Rights Act, § 504 of the Rehabilitation Act of 1973, reversal of the Office of Administrative Hearing ("OAH") decision, declaratory and injunctive relief. (Dkt. No. 50.)

On August 3, 2012, K.C. filed a motion for preliminary injunction requiring District to continue to provide her with CART while her appeal under the IDEA was pending. (Dkt. No. 52.) On August 18, 2012, the parties filed a stipulation where District agreed to provide K.C. with CART while her IDEA claim was pending in this Court. (Dkt. No. 53.)

On August 22, 2012, K.C. filed a motion for summary judgment on all claims in the amended counterclaim. (Dkt. No. 54.) On October 22, 2012, the case was transferred to the undersigned judge. (Dkt. No. 55.) On March 13, 2013, the Court

---

[2]CART, also known as a "word-for-word" system, "involves a stenographer who uses a stenographic (or court reporting machine) to create a verbatim transcript on a laptop viewed by the pupil. The transcript appears almost simultaneously as the words are spoken." (Supp. AR 567.)

[10CV897-GPC(DHB)]

denied K.C.'s motion for summary judgment as to the IDEA claim[3] and *sua sponte* stayed the case pending a decision by the Ninth Circuit in <u>K.M. v. Tustin Unified Sch. Dist.</u>, No. SACV 10-1011, 2011 WL 2633673 (C.D. Cal. July 5, 2011); and <u>D.H. v. Poway Unified Sch. Dist.</u>, No. 09cv2621-L(NLS) (S.D. Cal. June 12, 2012).   On August 6, 2013, the Ninth Circuit reversed and remanded the district court's granting of summary judgment on the ADA claims in both cases and on the Unruh Civil Rights Act claim in <u>K.M. v. Tustin</u>.   <u>K.M. v. Tustin Unified Sch. Dist.</u>, 725 F.3d 1088 (9th Cir. 2013).   The Ninth Circuit held that school district's compliance with its obligation to deaf or hard-of-hearing child under the IDEA did not necessarily establish compliance with its effective communication obligations to that child under Title II of the ADA. <u>Id.</u>

### Factual Background

At the time of the due process hearing, in December 2009, K.C. was a 15 year old girl, with profound hearing loss in both ears, attending general education classes in the Poway Unified School District.   K.C.'s hearing loss occurred at the age of five months as a result of meningitis.   K.C. received a cochlear implant[4] in her right ear at 22 months.   She wore a hearing aide in the left ear until she received a cochlear implant in her left ear around the end of April 2009.   In July 2009, K.C.'s audiologist concluded that K.C. hears about 52 percent of what is said in real-life situations.

On May 18, 2009, an individualized education program ("IEP") meeting was convened to discuss K.C.'s transition from middle school to high school.   In attendance at the meeting were parents, program specialists Jodie Payne and Geralyn Murray; Deaf

---

[3]The Court notes that District did not file a cross motion for summary judgment on the counterclaim.   Typically, in a review of an ALJ's decision under the IDEA, cross motions for summary judgment are filed.

[4]"A cochlear implant is an electronic device, part of which is surgically implanted in the head of the deaf individual.   Sound is picked up by an external processor, converted to energy and sent into the implanted computer chip.   Based on the energy received, the device stimulates the nerves in the inner ear, which then transmit information to the brain.   Unlike a hearing aid, the cochlear implant stimulates the ear itself; it does not merely make the sounds louder." (Supp. AR 565.)

[10CV897-GPC(DHB)]

and Hard of Hearing ("DHH") itinerant teachers Carol Reeves and Ms. Simpson; Ms. Suennen; Ms. Mehaffie; Ms. Ugalde; and Kelly Burke, an assistant principal at the High School.  (Supp. AR 570; AR 187.)  At the meeting, parents requested CART transcription service. (Supp. AR 570.)  After discussing K.C.'s performance in school, her goals, needs, services, accommodations, supplemental aids and services, assistive technological devices and services, communication strategies, teacher comments, and parent comments and requests, (AR 187-97), the May 18, 2009 IEP offered the following: DHH Language and Speech, Resource Specialist Program Learning Strategies class; preferential seating; a second set of text books for the home; copies of teacher's notes when necessary; closed captioning for media; peer note taker in Health class; personal auditory FM system[5]; laptop for streaming closed captioned videos; closed caption decoder; visual presentation of new materials and vocabulary; and directions to teachers to face K.C. when speaking.  (Supp. AR 570.)  It also determined transcription would be provided in English, Geometry and Biology; however, it did not specify which program it would utilize. (Supp. AR 570.)  Parents refused to consent to the IEP and requested that the type of transcription service be designated in the IEP.

On June 9, 2009, the IEP meeting was reconvened to discuss which type of transcription system would be provided to K.C.  (Supp. AR 571.)  Parents sought CART for K.C.  Ms. Simpson informed parents with District had communicated with other school districts about CART and described a student from one district who switched from CART to "meaning-for-meaning" system because he was overwhelmed by the amount of information presented in the verbatim format.  (Supp. AR 571.)  Ms. Simpson concluded "meaning for meaning" system was appropriate for K.C.  (Supp. AR 571.)  District concluded that K.C. would benefit from transcription services but

---

[5]"An FM system uses radio frequencies to transmit audio signals directly to hearing aides and cochlear implants.  It consists of a wireless microphone the speaker wears close to his mouth and the  desired acoustic signal is transmitted directly into the hearing device." (Supp. AR 565.)

IEP team did not specify the modality or specific program.  (AR 198.)  Parents did not consent to the IEP.  (AR 200.)

In a declaration, K.C. states that she must "concentrate intently" to understand what little she hears.  (Dkt. No. 54-2, K.C. Decl. ¶ 2.)  Since she only hears part of what is said, she must think carefully and use the context to figure out what is said.  (Id. ¶ 4.)  She also uses visual strategies like lip reading, and observing a person's face and body language to figure out what is said.  (Id.)  These strategies require intense concentration and focus.  (Id.)  Use of these strategies causes K.C. to be exhausted and drained at the end of the school day.  (Id.)  She frequently gets headaches from concentrating intently in order to listen and understand spoken language at school. (Id.)

In class, she cannot hear because people are either too far away, talking over one another, or there is background noise.  (Id. ¶ 3.)  It is also difficult for her to hear and understand what other students say since they talk too fast and it is hard to follow along with class discussions.  (Id.)

K.C. has used CART for some of her classes since the middle of her freshman year.  (Id. ¶ 5.)  According to K.C., CART is very effective in helping her understand what people are saying.  (Id.) In class, CART allows K.C. to follow discussions, assists with her note taking, allows her to hear social comments and jokes, and helps with learning new vocabulary.  (Id. ¶ 6.)  Using CART does not give her headaches since she does not have to concentrate so intently.  (Id.)

K.C. states she tried meaning-for-meaning transcription[6] services such as TypeWell and C-Print; however she found them confusing and was unable to follow the discussion in class.  (Id.)  She felt she was missing more of the lecture trying to figure out what she missed by looking through the TypeWell transcription since

---

[6] "'Meaning for meaning'" transcription is not as exact or thorough as word-for-word transcription, but the degree of the gap between them depends on who is doing the critiquing." Poway Unified Sch. Dist. v. Cheng ex rel. Cheng, 821 F. Supp. 2d 1197, 1199 n. 1 (S.D. Cal. 2011).

[10CV897-GPC(DHB)]

TypeWell does not transcribe exactly what the teacher says.  (Id.)  K.C. states that CART is the only aid that allows her to understand almost everything that is said in class.  (Id. ¶ 10.)  She also states that the accommodations that District was to provide were not fully implemented and even with those accommodations, she still had trouble hearing in class and missed what other students said.  (Id. ¶ 8.)

K.C. filed a due process complaint with Office of Administrative Hearing ("OAH") against District pursuant to 20 U.S.C. § 1415 and California Education Code section 56500 *et. seq*.  An administrative hearing was held and evidence presented.  On January 29, 2010, ALJ Helfand granted the student's request and ordered that District provide the student with CART services in English, Health, Geometry and Biology classes immediately. (AR 120-134.)  District appealed the ALJ's decision and filed a complaint in this Court on April 28, 2010.  (Dkt. No. 1.)

## Discussion

The remaining causes of action in K.C.'s counterclaim are Title II of the ADA and the Unruh Civil Rights Act.

**A.    Standing to Pursue ADA Claims**

District argues that K.C.'s injunctive and declaratory claims for relief are moot since K.C. lacks constitutional standing to pursue such relief under the ADA since she graduated in June 2013 and also because she had been receiving CART since January 29, 2010 until her graduation.  K.C. does not dispute District's arguments on the injunctive and declaratory relief; however, she contends that she is still entitled to damages under the ADA.

Constitutional standing under Article III requires that (1) the party invoking federal jurisdiction must have suffered some concrete and particularized, and actual or imminent injury; (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision would likely redress or prevent the injury.  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.</u>, 528 U.S. 167, 180–81 (2000); <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992).  The party asserting the claim has the burden

[10CV897-GPC(DHB)]

of establishing standing.  See Lujan, 504 U.S. at 560.  A "plaintiff must demonstrate standing separately for each form of relief sought."  Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010).

"Where only injunctive or declaratory relief is sought, a plaintiff must show 'a very significant possibility' of future harm in order to have standing to bring suit." Coral Cons. Co. v. King County, 941 F.2d 910, 929 (9th Cir. 1991).  "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." Mayfield, 599 F.3d at 970 (citing Lujan, 504 U.S. at 564).  "Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a 'real or immediate threat . . . that he will again be wronged in a similar way.'" Id. (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)).

K.C. seeks summary judgment declaring that she was entitled to CART under her fifth cause of action for declaratory relief pursuant to 28 C.F.R. § 35.160.  She also seeks injunctive relief compelling District to continue to provide her with CART for her final years in high school.

It is undisputed that since January 29, 2010, during K.C.'s 9th grade year, K.C. has been receiving CART.  Moreover, K.C. graduated in June 2013 and is no longer a student within the district. K.C.'s claims for injunctive relief and declaratory relief are premised on past harms and there are no allegations that K.C. might at some point be subject to the district's same policies and actions such that any live controversy warranting future declaratory or injunctive relief exists.  See Bird v. Lewis & Clark College, 303 F.3d 1015, 1019 (9th Cir. 2002) (student lacked standing for two out of three of the equitable remedies since she graduated from the College and failed to demonstrate a real or immediate threat that the College will subject her again to discrimination).

Accordingly, the Court lacks subject matter jurisdiction over K.C.'s claims for injunctive and declaratory relief.  See Nat'l Wildlife Fed'n v. Adams, 629 F.2d 587,

[10CV897-GPC(DHB)]

593 n. 11 (9th Cir.1980) ("[B]efore reaching a decision on the merits, we [are required to] address the standing issue to determine if we have jurisdiction.").

While K.C.'s fifth cause of action for declaratory relief and sixth cause of action for injunctive relief are now moot, her ADA and Unruh causes of action for damages are still viable and not moot since K.C. also seeks damages under both causes of action. She seeks damages for not being provided CART for eight months from May 19, 2009 to January 29, 2010, and once CART was provided, she seeks damages for not being provided CART for all of her classes. The Court now considers whether there are genuine issues of material fact whether District denied K.C. with communication that is effective as with others.

**B.      Legal Standard for Summary Judgment**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325.

1   "Where the record taken as a whole could not lead a rational trier of fact to find for the

2   nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v.</u>

3   <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). In making this determination, the court

4   must "view[] the evidence in the light most favorable to the nonmoving party." 

5   <u>Fontana v. Haskin</u>, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in

6   credibility determinations, weighing of evidence, or drawing of legitimate inferences

7   from the facts; these functions are for the trier of fact. <u>Anderson</u>, 477 U.S. at 255.

8   **C.     Title II of the ADA**

9          K.C. asserts that District did not ensure that communications with K.C. were as

10  effective as with non-disabled students, did not furnish her with auxiliary aids that

11  would allow her an opportunity to participate equally, and did not defer to K.C.'s

12  preferred choice of auxiliary aid. In opposition, District argues that an ADA violation

13  occurs when it fails to allow "meaningful access" to a public education and District

14  provided K.C. with "meaningful access."

15         The ADA prohibits discrimination against qualified individuals with disabilities.

16  42 U.S.C. § 12132. Under Title II, a plaintiff must show that (1) she is a qualified

17  individual with a disability; (2) she was excluded from participation in a program,

18  denied benefits or otherwise discriminated against by a public entity; and 3) such

19  exclusion, denial of benefits or discrimination was because of her disability. <u>Duvall</u>

20  <u>v. County of Kitsap</u>, 260 F.3d 1124, 1135 (9th Cir. 2001).

21         At issue is whether K.C. was denied benefits under Title II of the ADA by being

22  denied her request to utilize CART in her high school classes. As to individuals with

23  hearing disabilities, the Title II implementing regulations provide that a school district

24  must take steps to ensure that communications with students with disabilities are as

25  "effective as communication with others . . . ." <u>See</u> 28 C.F.R. § 35.160. The

26  regulations further provide that:

27         (b)(1) A public entity shall furnish appropriate **auxiliary aids and**
       **services where necessary** to afford individuals with disabilities,
28     including applicants, participants, companions, and members of the
       public, an **equal opportunity** to participate in, and enjoy the benefits

of, a service, program, or activity of a public entity.

(2) The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. **In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities.** In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

28 C.F.R. § 35.160 (emphasis added). Auxiliary aids and services are defined as applicable to individuals who are "deaf or hard of hearing." 28 C.F.R. § 35.104.

However, a public entity is not required "to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.164.

In <u>Duvall</u>, a hearing impaired individual sued numerous state and county officials alleging violations under Title II of the ADA, among other causes of action, for refusing to provide real-time transcription at hearings held during his marriage dissolution proceedings. <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124 (9th Cir. 2001). The district court granted summary judgment on all causes of action for defendants. <u>Id.</u> at 1133. As to the ADA cause of action, Ninth Circuit reversed summary judgment for the defendants holding that there was a material question of fact of whether the alternative accommodations "prevented him from participating equally in the hearings at issue." <u>Id.</u> at 1138. The Ninth Circuit stated that to prevail under the ADA, a plaintiff "must show that the accommodations offered by the County were not reasonable and that he was not able to participate equally in the proceedings at issue." <u>Id.</u> at 1137. While the County argued that it offered two effective accommodations for plaintiff's hearing impairment, the plaintiff provided evidence that the offered accommodations were inappropriate to his needs. <u>Id.</u> at 1137. Moreover, he provided evidence that he could not participate equally in the hearings because the "intense

concentration required to attempt to follow the lengthy proceedings through a combination of lip reading, aural hearing, and interpretation of body language resulted in headaches, exhaustion, and tinnitus, making it even more difficult for him to hear." Id. Based on the disputed facts, the Court held that there was a genuine issue of fact whether the County's refusal to provide videotext display prevented him from participating equally in the hearings at issue. Id. at 1138; Duffy v. Riveland, 98 F.3d 447, 455-56 (9th Cir. 1996) (reversal of summary judgment under Title II based on disputed facts of whether a deaf inmate was provided effective communication at a prison classification hearing).

In another case, a district court granted defendant's motion for summary judgment explaining that plaintiff had not shown it was "necessary" for her to use a Segway[7] to visit Disneyland because she would not have been "effectively excluded" without it under Title III of the ADA. Baughman v. Walt Disney World Co., 691 F. Supp. 2d 1092, 1095 (C.D. Cal. 2010). The Ninth Circuit reversed and remanded explaining that the ADA "guarantees the disabled more than mere access to public facilities, it guarantees them 'full and equal enjoyment.'" Baughman v. Walt Disney World Co., 685 F.3d 1131, 1135 (9th Cir. 2012). In order to make such a determination, "public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience." Id.

In a school related case, a medical school student with a serious hearing impairment brought action against Creighton medical school under Title III of the ADA[8] and the Rehabilitation Act for the school's refusal to provide his requested

---

[7]Segway is "a two-wheeled mobile device operated while standing." Baughman v. Walt Disney World Co., 685 F.3d 1131, 1132 (9th Cir. 2012).

[8]Title III (applicable to privately operated public accommodations) of the ADA has similar regulations concerning effective communication to the hearing impaired as Title II (applicable to public services) of the ADA. See Gilstrap v. United Air Lines, Inc., 709 F.3d 995, 1002 (9th Cir. 2013); compare 28 C.F.R. § 35.160 (Title II) with 28 C.F.R. § 36.303 (Title III); see also Folkerts v. City of Waverly, Iowa, 707 F.3d 975, 984 (8th Cir. 2013) (applying

1  accommodation of CART.  Argenyi v. Creighton Univ., 703 F.3d 441 (8th Cir. 2013).

2  The Eight Circuit held that under both § 504 and Title III[9], Creighton was to provide

3  "reasonable auxiliary aids and services to afford Argenyi 'meaningful access' or an

4  equal opportunity to gain the same benefit as his nondisabled peers."  Id. at 449. The

5  court explained that the "aids and services 'are not required to produce the identical

6  result or level of achievement for handicapped and nonhandicapped persons,' but they

7  nevertheless 'must afford handicapped persons equal opportunity to . . . gain the same

8  benefit.'"  Id. (citing Loye v. Cty. of Dakota, 625 F.3d 494, 499 (8th Cir. 2010)).  This

9  inquiry is "inherently fact-intensive" and "largely depends on context."  Id. (quoting

10  Liese v. Indian River Cty. Hosp. Dist., 701 F.3d 334, 342-43 (11th Cir. 2012)).

11      The Eighth Circuit reversed and remanded the district court's grant of summary

12  judgment to Creighton.  Id. at 451.  The court concluded that there was a genuine issue

13  of material fact as to whether Creighton denied Argenyi an equal opportunity to gain

14  the same benefit from medical school as his nondisabled peers by refusing to provide

15  his requested accommodation.  Id.

16      In this case, K.C. argues that her headaches and the considerable extra work

17  involved to understand what is being taught or discussed in the classroom does not

18  provide her with communication that is as effective as with others.  Moreover, the fact

19  that K.C. earned good grades does not mean that communication for her is effective.

20  In opposition, District argues that it gave primary consideration to K.C.'s request for

21  CART, discussed the request with K.C.'s parents, responded in writing and ultimately

22  offered TypeWell as an effective alternative under 28 C.F.R. § 35.160.[10]

23

24  analysis of Argenyi to Title II ADA claim).

25      [9]The court held that § 504 of the Rehabilitation Act and Title III of the ADA are similar
   in substance and the cases interpreting them are "interchangeable."  Argenyi, 703 F.3d at 448.
26

27      [10]District also argues that a "mere inequality between the impact on a disabled student
   and a non-disabled student in the classroom is not sufficient to meet this [meaningful access]
28  standard."  (Dkt. No. 65, District's Brief at 18.)   However, District has applied the wrong
   standard.  As explained in Argenyi, the fact finder must look whether the aids and services

1   A determination whether District provided K.C. with "meaningful access" or an

2   equal opportunity to gain the same benefit as her nondisabled peers is a fact intensive

3   inquiry.  See Argenyi, 703 F.3d at 449; see also Duvall, 260 F.3d at 1138; Duffy, 98

4   F.3d at 455-56.  A school district's obligation under Title II of the ADA to provide a

5   specific auxiliary aid or device will depend on the individual's request and a

6   comparative analysis of the services provided to individuals with and without

7   disabilities.  A genuine issue of material fact exists as to whether District provided K.C.

8   with "meaningful access" or an "equal opportunity" to gain the same benefits from her

9   classes as her nondisabled peers by denying her requested accommodation of CART.

10   Accordingly, the Court DENIES Counterclaimant's motion for summary judgment on

11   the ADA cause of action.

12   **D.    California's Unruh Civil Rights Act**

13   District argues that the Unruh Civil Rights Act cause of action fails because it

14   is subject to the presentment requirement of the California Tort Claims Act ("CTCA").

15   K.C. contends that the presentment requirement of the CTCA is not required since her

16   primary goal in filing the counterclaim was seeking equitable relief which was an

17   order requiring District to provide K.C. with CART at school.

18   When a plaintiff seeks to recover money or damages from a public entity under

19   the Unruh Act, the plaintiff must comply with the California Tort Claims Act's

20   procedures.  Gatto v. County of Sonoma, 98 Cal. App. 4th 744, 760 (2002); see Gov't

21   Code sections 905 and 945.4[11]  The presentation of a claim under the Unruh Act is

22   generally not required prior to the filing of a nonpecuniary action, such as one seeking

23   injunctive or declaratory relief.  Loehr v. Ventura County Community College Dist.,

24   ─────────────

25   provide a disabled person an equal opportunity to gain the same benefit and not whether the
impact or result of the aids and services are equal.  Argenyi, 703 F.3d at 449 (citing Loye, 625
26   F.3d at 499).

27   [11] California Government Code section 945.4 provides that, "[N]o suit for money or
damages may be brought against a public entity . . . until a written claim therefor has been
28   presented to the public entity and has been acted upon by the board, or has been deemed to
have been rejected by the board . . . ."  Cal. Gov't Code § 945.4.

[10CV897-GPC(DHB)]

147 Cal. App. 3d 1071, 1081 (1983).  However, if a plaintiff seeks both damages and nonmonetary relief, the claim presentation requirement is applicable unless the requested damages are merely incidental or ancillary to the requested equitable relief. Gatto, 98 Cal. App. 4th at 760-762; Eureka Teacher's Assn. v. Bd. of Educ., 202 Cal. App. 3d 469, 475 (1988) (request for backpay and fringe benefits held incidental to mandamus action for reemployment and therefore not subject to the Act.)  The rule does not apply where a petition for extraordinary relief is merely incidental or ancillary to a prayer for damages.  Loehr, 147 Cal. App. 3d at 1081.  The critical question is whether the "primary purpose" of the action is to recover damages or to obtain injunctive relief.   Gatto, 98 Cal. App. 4th at 762.   A party may not avoid the presentment requirements of the CTCA by creatively pleading a nonpecuniary cause of action. See Loehr,147 Cal. App. 3d at 1081–1082  ("self-styled causes of action for mandamus and injunctive relief" added to a complaint alleging three causes of action claiming monetary damages do not change the primary purpose of the action); Baiza v. Southgate Recreation & Park Dist., 59 Cal. App. 3d 669, 673–674, (1976) (petition for writ of mandamus directing defendant to pay money to plaintiff has the primary purpose of obtaining money.)  These courts analyze the claims for relief in the complaint at issue.

In this case, the first amended counterclaim alleges six causes of action.  K.C. seeks relief for damages as to the ADA, Unruh Civil Rights Claim and dismissed § 504 cause of action.  However, in those causes of action, K.C. also sought an "Order compelling Poway to provide CART." (Dkt. No. 50.)  Moreover, the first amended counterclaim also alleges causes of action for reversal of OAH decision, declaratory relief and injunctive relief, which are all nonpecuniary relief. (Id. at 14-17.)  K.C.'s request for injunctive relief seeking an order compelling District to provide CART is contained in all six causes of action which suggests that K.C.'s primary purpose was seeking equitable, nonpecuniary relief.

The Court concludes that the primary purpose of the amended counterclaim was

[10CV897-GPC(DHB)]

1   equitable relief and not monetary damages.   Therefore, K.C. is exempt from the

2   presentment requirements under the CTCA.

3        A violation of the ADA is a violation of the Unruh Civil Rights Act.  See Cal.

4   Civil Code 51(f) (a "violation of any right of any individual under the federal

5   Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this

6   section."); see K.M., 725 F.3d at 1094 n. 4 (because a violation of the ADA is a *per se*

7   violation of the Unruh Act, the court did not discuss the Unruh Act claim separately

8   from her ADA claim).  Therefore, based on Court's analysis on the ADA claim that

9   there is a genuine is of material fact, the Court DENIES K.C's motion for summary

10   judgment on the Unruh Civil Rights Act cause of action.

## Conclusion

12        Based on the above, the Court DENIES Counterclaimant K.C.'s motion for

13   summary judgment on the ADA and the Unruh Civil Rights Act causes of action.[12]  The

14   Court also DISMISSES the fifth cause of action for declaratory relief and sixth cause

15   of action for injunctive relief as MOOT.

16        IT IS SO ORDERED.

18   DATED:  January 14, 2014

HON. GONZALO P. CURIEL
United States District Judge

---

[12]In its supplemental opposition brief, District concludes that "the District respectfully requests that this Court grant the District's Motion and dismiss Plaintiff's action in its entirety."  (Dkt. No. 65 at 24.)  The Court notes that District did not file a motion for summary judgment on the issues in the Counterclaim.  The instant order is only ruling on K.C.'s motion for summary judgment on her counterclaim.

[10CV897-GPC(DHB)]